69   169
135   528

## WAKEMAN v. CHAMBERS.

1. **Intoxicating Liquors**: UNLAWFUL SALE: EVIDENCE: PURCHASER NOT EXCUSED FROM TESTIFYING. Where the sale of intoxicating liquors is a crime under the prohibitory law, the purchaser is not a participant in the crime, and he cannot excuse himself from testifying as to such purchases made by him, on the ground that his testimony would tend to criminate himself.

*Appeal from Muscatine District Court.*

THURSDAY, JUNE 17.

THE defendant is a justice of the peace, and in a judicial proceeding before him it was adjudged that the plaintiff was guilty of a contempt, and judgment was rendered that he be imprisoned until the order made by the justice was complied with, or he was otherwise discharged according to law. Upon the application of the plaintiff the district court issued a *certiorari*, and upon the hearing it was adjudged that the plaintiff was not in contempt, and he was discharged. The defendant appeals.

*D. C. Cloud*, for appellant.

*H. J. Lauder*, for appellee.

SEEVERS, J.—It became material in a judicial proceeding before the defendant, a justice of the peace, to ascertain whether one Lang had sold intoxicating liquors contrary to law, and the plaintiff, being lawfully summoned as a witness, was asked the following questions: "What is your bus - iness? *Answer.* Proprietor of the Eastern House. * * * Have you bought any beer of Charles Lang within four months last past? *A.* I refuse to answer. Why do you refuse to answer? *A.* I refuse to answer. Have you, by yourself or any other person, bought beer by the keg, or any other intoxicating liquor, of said Charles Lang, within four months last past? *A.* I refuse to answer. Why do you refuse to answer? *A.* I refuse to tell. I refuse to answer on the ground that my answer would tend to crimi- nate me, and I am so instructed by my attorney." For refus- ing to answer the foregoing questions the justice adjudged that the plaintiff was in contempt, and we are required to determine whether the district court erred in holding that he was not.

I. It is provided by statute that "all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission,     *     *     *     must hereafter be pun-

ished as principals." Code, § 4314. The distinction between accessories before the fact and principals is abrogated by statute, and a public offense includes both misdemeanors and felonies. Code, § 4103. It is contended that, as the seller of intoxicating liquors contrary to law is guilty of a public offense, the purchaser is also, because he aids in the commission of such offense. It is undoubtedly true that if there was no one to purchase there could not be a sale, nor an offense consummated; and yet it is equally true that the statute creating the offense does not provide or contemplate that the purchaser is guilty of any offense whatever. The contrary intent, we think, clearly appears. The statute was passed in view of the well-known fact that persons who purchase and use intoxicating liquors frequently become intoxicated, and a few, at least, become confirmed drunkards.

The object of the statute is twofold: the protection of the people of the state, and that class of persons likely to become purchasers, as a protection against themselves. Hence it is provided that a person found in a state of intoxication shall be deemed guilty of a misdemeanor, and be punished as prescribed in the statute. But the person so found intoxicated is invited to give information, under oath, when, where and of whom he purchased or received the liquor, and thereupon the magistrate is authorized to remit the penalty prescribed for being found in a state of intoxication. It cannot be supposed that the legislature, in thus inviting the intoxicated person to inform on the seller, contemplated that he thereby criminated himself in the crime of aiding and abetting in the sale, and was liable to be punished as a principal. The sale of intoxicating liquor is lawful at common law, and it becomes unlawful simply because the statute so provides. Under the statute the sale, or keeping with intent to sell, is a public offense, because the statute so declares. The statutory crime is bounded by the statute creating it, and the statute operates on, and has force and effect against, the persons therein named, and no others. As the prohibi-

tory statute does not provide that the purchaser is guilty of any crime, it seems to us this fact practically ends the inquiry.    If such had been the intent, it would certainly have been so provided in express terms.    So far from this being so, the implication is clearly the other way.    The prohibitory statute does not regard the purchaser as an aider and abettor in any criminal act, and it has been so held, under similar statutes, in *State v. Rand*, 51 N. H., 361, and *Com. v. Willard*, 22 Pick., 476.    It is said, however, that the decision in this last case would have been the other way if the crime had been of greater magnitude.    We do not think this is so, and this clearly appears from the subsequent cases of *Com. v. Downing*, 4 Gray, 29; *Cobb v. Farr*, 16 Id., 597; *Walan v. Kerby*, 99 Mass., 1; *Adams v. Goodnow*, 101 Id., 81.

In *Doran's Case*, 2 Pars. Eq. Cas. (Pa.), 467, the statute made it a crime for any person "to buy, use or expose to sale" tickets in lotteries, and therefore it was held that the purchaser could not be compelled to testify, for the reason that he himself was guilty of a crime.    The only case to which we have been referred which seems to sustain the ruling of the district court is *State v. Bonner*, 2 Head, 135.    A statute in Tennessee prohibited the sale of liquor by slaves, and it was held in the cited case that a white man who purchased from a slave committed a criminal offense.    We think that, both on principle and the authority of adjudged cases under statutes similar to ours, the better rule is otherwise.

It should be remembered that the prohibitory statute has been in force in this state for many years, and it is undoubtedly true that there have been many convictions thereunder on the evidence of the purchaser alone; for, ordinarily, no other evidence can be procured; and this is the first instance, to our knowledge, where the right of the state to such evidence has been questioned.    Nor are we advised that a single prosecution against the purchaser for aiding in the commission of a crime was ever commenced, and this has a

strong tendency to show what has been generally regarded as the proper construction of the statute.

II.　It is provided that any citizen of the state, except hotel-keepers, keepers of saloons, eating houses, grocery keepers and confectioners, is hereby permitted, within the county of his residence, to buy and sell intoxicating liquors for mechanical, medicinal, culinary and sacramental purposes only; provided, he shall first obtain permission from the board of supervisors of the county in which such business is conducted.　*　*　*"　Code, § 1526.　The sole object of this section, so far as the same has any applicability to this case, is to define who or what classes of persons are not entitled to a license to sell intoxicating liquors for a lawful purpose.　The prohibited class can neither buy nor sell. If this statute stood alone, it would be regarded as directory, for the reason that no penalty is prescribed; and, as we have seen, there is no statute which provides that the purchaser is guilty of any crime, and therefore we are unable to see that the section of the Code under consideration has any bearing on the question to be determined.

III.　Our attention is called by counsel for the appellee to section 1542 of the Code, as amended by chapter 143 of the Laws of the Twentieth General Assembly.　We understand this section to apply to persons who own or keep intoxicating liquors with intent to sell, or who are so engaged, concerned or employed.　It was not proposed to prove any such fact by the appellant.　He was simply asked whether he had purchased any liquors from a named person.　If he had answered the question in the affirmative, this would have had no tendency to convict him of a crime.　He had a right to own and keep liquors, unless he so owned and kept them with intent to sell.

Our attention is also called by counsel to section 15 of said chapter.　The primary object of this section is to prohibit sales in a club-room, and there is no pretense that the

appellant was in any manner aiding in keeping such a room, or that he kept liquor with intent to sell the same.

The judgment of the district court is

REVERSED.