THE PEOPLE v. JOSEPH RICE AND WILLIAM BERRY.

*Criminal law—Information—Duplicity—Waiver—Local option— Intoxicating liquors—Instructions to jury—Paid witnesses—Keeping saloon—Liability of bartender.*

1. In a prosecution for a violation of the local option law, just as the case was about to be submitted to the jury, the respondent's counsel for the first time objected that two distinct offenses were charged in the information, whereupon the prosecuting attorney was required to and did elect to claim a conviction for but one of said offenses. And it is held that the objection is therefore without force.

2. Two witnesses testified in behalf of the people that they drank lager beer in the place kept by the respondents, and one of them further testified that the beer was intoxicating. Another witness for the people testified on cross-examination that he drank with one of said witnesses, and from the same bottle; that what he drank was hop pop; that he could not swear whether or not hop pop is intoxicating, but that he was not affected by drinking it. A witness for respondents testified that he was present, and that what the witnesses first mentioned drank was not lager beer. The respondents testified that they did not keep lager beer for sale at the time charged, and did not sell to said witnesses any such beer; that they had tested hop pop, and it was not intoxicating. And it is held that the court should have instructed the jury, as requested by the respondents, that, in order to convict, they must believe from the evidence introduced, beyond a reasonable doubt, that

the respondents, on the day charged, sold lager beer, as alleged in the information, and that, if they should believe they only sold hop pop, they should acquit the respondents; but that it would have been proper to add to this instruction a caution that, if what was sold was *in fact* lager beer, the responsibility for the sale could not be avoided by giving it the name of "hop pop."[1]

3. The respondents had the right to show upon cross-examination, if they could, as affecting the credibility of the people's witnesses, that they were employed as detectives to ferret out violations of the local option law, and were acting under pay; citing *People v. Murphy*, 93 Mich. 41.

4. Where the fact of such employment is established, it is error to refuse a request to charge that, in determining the credit that should be given to the testimony of such witnesses, the jury should consider the fact that they are "hired witnesses."

5. Employment in a saloon as bartender to sell, both in the presence and absence of the proprietor, is aiding and assisting to maintain said place; and, in a prosecution under the local option law: for keeping a saloon where liquors of the prohibited kinds were sold and furnished as a beverage, a bartender so employed may be charged as a principal.

Exceptions before judgment from Hillsdale. (Lane, J.) Argued April 25, 1894. Decided December 28, 1894.

Respondents were convicted of a violation of the local option law. Conviction reversed. The facts are stated in the opinions.

*C. A. Shepard* (*T. E. Dibell* and *W. C. Chadwick*, of counsel), for respondents.

*A. A. Ellis*, Attorney General, and *Guy M. Chester*, Prosecuting Attorney, for the people.

McGRATH, C. J. Respondents were charged with the violation of the local option law, and were convicted.

It is insisted that the information alleged two distinct

---

[1] The question what liquors are intoxicating within statutes regulating their sale, including judicial notice of their character, is discussed in a note to *Lemly v. State*, 20 L. R. A. 645.

offenses, viz., that of keeping a place where liquors were sold, and that of selling on a specified day. No objection was raised until the case was about to be submitted to the jury, when the people were required to elect, and did elect.[1] The objection is therefore without force.

One Alley testified that he went into defendants' place with one Adams, and—

"I drank what I called 'lager beer.' * * * What I drank I thought was beer. * * * I drank the same as I did the first time,—lager beer. I thought it was intoxicating."

Adams testified:

"I think I drank three glasses. It was beer,—'lager beer,' I should call it. It was intoxicating, stimulating."

One Spaulding, who was invited by Alley to go with them, testified:

"I am a miller by trade. I was engaged in the saloon business for six months at Freemont, Ind., and sold lager beer under a license law there. I called for beer. Mr. Berry said he had no beer, nothing stronger than hop pop. I told him we would take some of that. He poured it out, and we drank it, Mr. Alley and I together. It was poured out of the same bottle. What I drank was hop pop. I have drank lager beer. I couldn't swear whether hop pop is intoxicating or not. It never intoxicated me. I felt no effect of what I drank that day, and I don't think I ever drank enough hop pop to feel the effect of it. What I drank there that day was not lager beer. I know what lager beer is."

One Shepard testified that he was present when Alley and Adams were in the place; that he saw them drink; and that what they drank was not lager beer. The respondents both testified that they kept no lager beer for sale at the time charged; that they did not sell or furnish

---

[1] The prosecuting attorney elected to submit the case to the jury upon the count charging the respondents with keeping a place where liquors were sold.

to either Alley or Adams, at the time mentioned, any lager beer; that hop pop did not taste like lager beer; that they had tested hop pop, and it was not intoxicating.

Under this testimony, we think the respondents were entitled to the instruction requested, that,—

"In order to convict the defendants in this case, you must believe from the evidence introduced, beyond a reasonable doubt, that they sold on the 11th day of October, 1892, lager beer, as charged in the information; and, if you believe they only sold hop pop, then you should acquit them."

It would have been entirely proper, however, for the circuit judge to add to the instruction a caution that, if what was sold was in fact lager beer, the responsibility for the sale could not be avoided by giving it the name of "hop pop." On a trial for selling intoxicating liquors in violation of law, it is necessary to show by the evidence that the liquor sold was intoxicating. There are certain kinds of liquors in regard to which courts will take judicial notice that they are intoxicating, but hop pop is not one of them, nor does the statute declare that hop pop shall be deemed intoxicating. Neither Alley nor Adams was shown to be an expert, nor did it appear that either had had any personal experience or observation such as would enable him to form a correct opinion. Neither was shown to have been affected by the indulgence. Black, Intox. Liq. § 521.

Adams testified that he was a detective, and had been employed to ferret out violations of the local option law and secure convictions; that he had made a number of complaints, and had been sworn as a witness in a number of like cases. The defense sought to show upon cross-examination that Alley was also employed for the same purpose; that the meetings between Alley and Adams were

103 MICH.—23.

not accidental; that they had been together at various places; that both had testified in other cases; and that Alley had received pay for taking Adams to different localities in the county. We think this testimony was improperly excluded. The respondents had the right, upon cross-examination, to show that these witnesses were employed, and were acting under pay, as affecting their credibility. *People v. Murphy*, 93 Mich. 41, 45.

The respondents were entitled to their ninth request, which was as follows:

"In arriving at your verdict, you should take into consideration the fact that the witness Adams is a hired witness, and the fact that he is such hired witness should be considered by you in determining the credit that should be given his evidence."

It is urged that, inasmuch as Berry was an employé simply, he was not guilty of the offense of keeping the place. It seems to me that there is much force in this contention. The offense is purely statutory. The statute makes it unlawful for any person to sell, etc., or to keep a saloon or place where, etc. Many of the statutes make not only the principal, but all who aid or assist, liable. *State v. Stucker*, 33 Iowa, 395; *State v. Sullivan*, 83 Me. 417; *Tardiff v. State*, 23 Tex. 169. Our own statute regarding the sale of intoxicating liquors, in express terms, makes all who aid and assist liable as principals, but the local option law contains no such provision. Mr. Bishop says that, if the terms of a statute distinctly limit the punishment to persons who participate in the act only in a certain way, they furnish the rule for the court. If the expression is general, then, if the offense is of minor turpitude, and especially if the thing is only *malum prohibitum*, the courts, by construction, will limit its operation to those persons who are more particularly within the

express words of the enactment. 1 Bish. Cr. Law, § 657. In *Wakeman* v. *Chambers*, 69 Iowa, 169, the question arose as to the liability of the purchaser, and the court say:

"The sale of intoxicating liquor is lawful at common law, and it becomes unlawful simply because the statute so provides. Under the statute, the sale, or keeping with intent to sell, is a public offense, because the statute so declares. The statutory crime is bounded by the statute creating it, and the statute operates on, and has force and effect against, the persons therein named, and no others. As the prohibitory statute does not provide that the purchaser is guilty of any crime, it seems to us this fact practically ends the inquiry. If such had been the intent, it would certainly have been so provided in express terms."

Mr. Black says (section 372):

"A servant may be convicted of keeping and maintaining a saloon if, in the absence of the proprietor, he makes illegal sales of liquor, or otherwise assumes a temporary control of the premises."

The Massachusetts cases seem to uphold the rule laid down, but they also hold that a conviction for keeping is not supported by proof of sales made in the presence of the proprietor. The language "keep a place" involves the control and management of the place; and it is going very far to hold that because a clerk is left temporarily in charge, in the absence of the proprietor, he is chargeable as keeper of the place. In *State v. Main*, 31 Conn. 572, it is said that "to keep a hotel implies more than to live in one. The controlling head of a hotel keeps it. So the controlling head of a house of ill fame keeps it." Persons having the general charge, control, management, and supervision have been held liable as for keeping. *State v. Dow*, 21 Vt. 484; *Stevens v. People*, 67 Ill. 587. But I find no cases except those in Massachusetts holding that the mere temporary charge of a servant constitutes him the keeper of the place. *State v. McGuire*, 64 N. H.

529, holds the servant liable, but puts it upon the ground that the act of keeping is a misdemeanor, and that all who aid and assist are liable as principals. I think, however, that those who aid and assist in the commission of a misdemeanor are liable as principals in that class of cases only where the offense is *malum in se*, or criminal in itself, and not merely *malum prohibitum*. The statute, it seems to me, aims to reach any person who manufactures, sells, gives away, or furnishes, and the person also who keeps the place where manufactured, sold, given away, or furnished. I do not think that the language "to keep a saloon or place" can be held to apply to a mere bartender who is under the immediate control of the master, although such master may be temporarily absent, at dinner perhaps. As between the two persons here charged, the proprietor should be deemed the one who keeps the place, under the statute.

The conviction must therefore be set aside, and a new trial had as to the respondents. In my opinion, respondent Berry should be discharged, but my brethren do not concur in that view.

MONTGOMERY, J. I concur with the Chief Justice except as to the last point. In respect to that question, I concur with Mr. Justice GRANT.

LONG, J., concurred with MONTGOMERY, J.

GRANT, J. 1. Defendant Joseph Rice was the keeper of the place where it is charged that lager beer was sold in violation of the local option statute. Defendant Berry was his bartender. Two witnesses testified that they called for lager beer, and that they obtained it, and drank it. Others testified that they called for hop pop, and that they did not know that it was intoxicating. It is alleged as error that the court should have charged the jury, as requested, that, if they believed that the defendants sold only hop

pop, they should acquit them. It would have been proper to give this charge, coupled with the further instruction that, if what was called hop pop was in fact lager beer, then they should convict. We have no information as to the ingredients of hop pop. It may or may not be one of the subterfuges resorted to by persons desiring to avoid the law. The only charge in the information was the selling of lager beer. The judge clearly and plainly instructed the jury that if the people had not satisfied them beyond a reasonable doubt, by their evidence, that the defendants sold this article, then they must acquit. The jury, under the charge, could not have convicted except by finding that the liquor sold was, in fact, lager beer. The charge covered the entire ground, and we see no error in refusing this specific request.

2. On cross-examination of the witness Alley, he was permitted to testify that, on four or five examinations before justices of the peace, he had been sworn in connection with the witness Adams, where it was claimed they were together; that he had never gone with Mr. Adams to certain places named; that he had no arrangement or contract with Mr. Adams by which he was to take him around to different places, and assist him in looking up places where liquor was sold. It was also shown upon cross-examination of this witness that, in another case, witnesses were placed upon the stand to impeach him, and that two of them swore that his reputation for truth and veracity was bad. The witness was asked if he was with Adams in any of these places before going to the place called "Reading," and if he had ever received pay for riding to any of those places other than Reading, and if he had been around and been a witness in a number of cases. The refusal to permit these questions to be answered is alleged as error. We think the questions were within

the discretion of the court.   *Helwig v. Lascowski,* 82 Mich. 620.

3. Defendants' counsel requested the following instruction:

" In arriving at your verdict, you should take into consideration the fact that the witness Adams is a hired witness, and the fact that he is such hired witness should be considered by you in determining the credit that should be given his evidence."

The request was properly refused.   Whatever language it may have been proper for the counsel defending the prisoners to use in regard to this witness, it would not, in my judgment, have been proper for the court to say to the jury that he was a hired witness.   If he was a hired witness, then every detective employed by the people to investigate crime and hunt up evidence is a hired witness. Mr. Adams admitted his employment as a detective.   As such, it was his business to enter places upon which rested a suspicion that the law was there being violated, and to ask for drinks of liquors.   He held out no inducement to commit crime, and his employment as detective was legitimate and proper.   The employment of detectives is necessary for the protection of society.   Their conduct and interest in each individual case are proper subjects for comment by attorneys, and for the consideration of the jury.   It would have been entirely proper, under the authority of *People v. Murphy,* 93 Mich. 45, for the judge to call the attention of the jury specifically to this subject, and to instruct them that they might consider that fact as affecting his credibility.   But I can see no reason for holding that a detective who enters a gambling house or saloon to obtain evidence as to alleged violation of the laws of the State should be denounced by the court to the jury as a hired witness.   It is to be presumed that the

counsel argued this point fully to the jury. The court, in a general charge, instructed them that they should consider the conduct, character, appearance, and interest of the witnesses, with a view to determining the credibility to be given to them. In the absence of a proper specific request, we think there was no error.

4. It is insisted that the court erred in not directing an acquittal of the defendant Berry, the bartender, upon the ground that he was not a keeper. The charge in the information is that the respondents kept a saloon where liquors of the prohibited kind were sold and furnished as a beverage. Accessories in misdemeanors are unknown to the common law. All who participate in the commission of the offense must be charged as principals. It is, however, sought to limit this rule to acts which are *malum in se* and not *malum prohibitum*. In Massachusetts it is held that the clerk or bartender is liable if he acts in the absence of the principal, and is in charge of the place, but not when acting in his immediate presence. *Com. v. Churchill*, 136 Mass. 148; *Com. v. Galligan*, 144 Id. 171. In the latter case the court say:

" The defendants could be jointly found guilty only by proof that they jointly kept or maintained the nuisance charged. If one was sole proprietor, and the other only kept or maintained the nuisance as his servant, under his direct personal supervision, the latter could not be convicted. If, however, the servant, in carrying on the business of his employer, and in the absence of his employer, was authorized by him to make illegal sales of intoxicating liquor, and made such sales, both could be found guilty of maintaining the nuisance."

In some cases a distinction is made between the charge of unlawful selling and that of unlawful keeping. One of the propositions laid down by Black as sustained by the authorities is:

" If neither the principal nor the agent, master nor

servant, holds a license, the agent or servant is personally punishable for making the unlawful sale." Black, Intox. Liq. § 372.

In *Wakeman v. Chambers*, 69 Iowa, 170, a witness refused to answer as to his purchase of liquor, on the ground that the answer would tend to criminate himself. The case was decided upon the provisions of the statute, which in terms invited those who obtained liquor in the saloon to give information under oath, and the purchaser was therefore held not liable. A similar principle appears to have controlled the decision in *State v. Main*, 31 Conn. 574. This statute provided a punishment for keeping a house of prostitution, and a separate punishment for persons residing therein.

In *State v. Dow*, 21 Vt. 486, the respondent was held guilty of dealing in spirituous liquors without a license, although he did not sell himself, but had general charge of his employer's store, in which liquors, among other things, were sold. See, also, *State v. Bugbee*, 22 Vt. 32.

In *Stevens v. People*, 67 Ill. 587, where the offense charged was keeping a common gaming house, it was held that if the respondent was present, and in any way or manner aided or abetted or assisted in keeping, operating, and running such gaming room, he was guilty, although he was not the actual owner or proprietor thereof.

Employment in a saloon as bartender to sell, both in the presence and absence of the proprietor, is certainly aiding and assisting to maintain such place. While the authorities are not uniform, and some decisions are based upon the peculiar wording of the statute, I think the better rule is that all so aiding and assisting are guilty as principals. We see no good reason for making a distinction between offenses *malum in se* and those *malum prohibitum*.

It follows that the conviction was correct, and should be affirmed.

HOOKER, J., concurred with GRANT, J.