## JOHN E. WINN v. STATE.

No. A-2415.   Opinion Filed November 24, 1917.

(168 Pac. 829.)

**INTOXICATING LIQUORS—Keeping Place—Evidence.** In a prosecution for keeping a place with the felonious intention of selling intoxicating liquors, the evidence examined, and held insufficient to sustain the verdict and judgment of conviction.

*Appeal from District Court, Harper County;*

*W. C. Crow, Judge.*

John E. Winn was convicted of a violation of the prohibitory law, and he appeals.   Reversed.

*Charles Swindall* and *C. W. Hofmeister,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

PER CURIAM.   On information filed in the district court of Harper county, charging that John Elbert Winn "did keep a place, to wit, a certain sod house on the southeast part of the town of Laverne, with the intention of selling, bartering, giving away, and otherwise furnishing spirituous, vinous, fermented, and malt liquors and imitations thereof and substitutes therefor," the plaintiff in error was tried and convicted, and his punishment fixed at imprisonment in the penitentiary for one year.   From the judgment, following the verdict, the defendant appeals.

The evidence shows that there was a picnic on July 4th, near the town of Laverne, in Harper county, and on July 5th a deputy sheriff, in executing a search warrant, seized a barrel that was on a dray in front of a sod house, situated between the town and the picnic grove.   Carl Rhodes, deputy sheriff, testified that on

July 5th, in the forenoon, he saw a drayman drive from town to the sod house, where he tried the door, which was locked, and then he drove to the grove and talked to a man there, and then went to the defendant, who returned with him from the grove to the sod house, where they carried out a barrel partly filled with bottled beer and placed it on the dray, and witness seized the barrel. Four bottles of beer were produced as part of those which were in the barrel.

Several witnesses for the state testified that they were at the sod house on the 4th of July and purchased beer; that two or three persons were standing around the tub, and were passing around the bottles. One witness identified the defendant as one of the persons selling the beer. The others testified that there was a beer-drinking party there, and the defendant seemed to be "milling around there the same as the rest of the bunch." For the defense several witnesses testified that the sod house was in charge of Mr. Flournoy, who represented the Kiel townsite company, and that E. V. Howard had possession of it on the 4th and 5th of July, and that the defendant worked all day on the 4th of July at a stand in the picnic grove.

As a witness in his own behalf the defendant testified that he lived on his homestead in Woods county, but worked off and on for two years in and near Laverne as a carpenter, well digger, and maker of cement sidewalks; that on the 4th and 5th days of July he worked at a stand in the picnic grove for N. C. Winn, selling candy, cigars, and notions; that he then lived with N. C. Winn, and E. V. Howard lived next door in Laverne; that on the morning of July 5th Howard came to the

stand where defendant was working and said he had a barrel of vivatone in the sod house that the officers were after, and asked defendant to get a dray and take it away; that he got Mr. Bailey's dray, and Howard gave him the key, and he went with the drayman to the sod house; that they carried out the barrel and put it on the dray; that Deputy Sheriff Rhodes appeared, and said he would take charge of the barrel; that he went back and worked the rest of the day at the stand; that no intoxicating liquor was ever shipped to him, and that he did not sell any of the beer when he visited the sod house on the 4th day of July; that he was only there a few minutes, and drank a bottle of what he thought was vivatone; that he had never sold any beer or whisky or intoxicating liquors of any kind.

The railroad and express agent at Laverne testified that the records of his office from the 1st of March did not show any shipments or deliveries of intoxicating liquors to John Elbert Winn; that before the picnic several barrels labeled "Vivatone" were received, part of which were for E. V. Howard. It also appeared that E. V. Howard left Laverne at the time as a fugitive. Three or four of the defendant's neighbors from Woods county qualified as character witnesses, and testified that his general reputation there as a law-abiding citizen was good. Three or four residents of Laverne qualified as character witnesses, and testified that defendant's general reputation as to being a law-abiding citizen was good.

We are of opinion that the evidence is insufficient to sustain the verdict and judgment, in that the evidence does not tend to prove a felonious keeping of a place for the sale of intoxicating liquors. In the case of *U. S. v. Smith,* 27 Fed. Cas. 1155, it is held:

"Neither a single act of play at a gaming table, called a sweat cloth, at the races, nor even a single day's use of it on the race field, is a keeping of a common gaming table, within the penitentiary act for the District of Columbia."

In the opinion it is said:

"Admitting the verb 'keep,' as used in the law, or rather the participle of that verb, namely, 'keeping,' can be strained to the sense contended for; that it may imply a momentary, or a few minutes,' or an hour's, keeping a sweat cloth (though the testimony, as far as I recollect it, only proved upon the traverser one single instance of his playing at such table), yet surely it does not become the court, nor is it consistent with the established principle of construction, nor the avowed humanity of the law, to be astute in searching for a meaning of the word to suit the occasion, against the undoubted sense in which the word is used in common parlance."

And see *State v. Irvin,* 117 Iowa, 469, 91 N. W. 760; *People v. Rice,* 103 Mich. 350, 61 N. W. 540.

A careful examination of the record impresses us with the belief that under the proof the county court was the proper tribunal in which to prosecute the transaction complained of.

For the reasons stated, the judgment of conviction is reversed.