COMMONWEALTH *vs.* MARGARET BURNS.

Middlesex.    November 24, 1896. — January 9, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Intoxicating Liquors — Evidence of Control of Premises — Exceptions —*
*Instructions — Trial.*

At the trial of a complaint for keeping a tenement used for the illegal sale of intoxicating liquors, there was evidence that, at the time named in the complaint, the defendant's mother owned and occupied the tenement, and had sold intoxicating liquors there for several years, and that the furnishings of the house were the same; and no change in the conditions about the premises appeared. There was also evidence that, on one occasion when police officers raided the house, the defendant opened the door, and, seeing who was there, closed it, saying, "No,

you don't," and she was seen, when the officers got into the house, at a sink with a pitcher which smelled of whiskey, and the sink smelled of whiskey ; that the mother said, in the defendant's presence, "I am not running this house," and the defendant said, "I do not want you to make out warrants against my mother, the second of January I took possession here, make out your warrants to me"; and that, on the occasion of another raid, the mother said, in the defendant's presence, "If I was running the house you would not take the pitcher from me that way." *Held*, that the evidence authorized a finding that, during the time covered by the complaint, the defendant exercised control of the tenement, either alone or jointly with her mother.

No exception lies to the refusal to give instructions in the language requested, if they are fully covered by the instructions given.

At the trial of a complaint for keeping a tenement used for the illegal sale of intoxicating liquors, it appeared that the defendant lived there with her mother, who owned the tenement, and had sold intoxicating liquors there for several years. The judge instructed the jury, in substance, that the question was who had control of the business ; that "in this kind of crime or offence, as in many others, a person may be guilty if he participates in it, if he is associated and shares in it and in the profit of it, and this defendant may be liable or guilty if she participated in the work of carrying on this place or house with the owner, or aided her mother in it, worked with her, and co-operated with her in it"; and that it was not necessary to show that the defendant had sole control, but if she carried on the business jointly with her mother she could be found guilty. *Held*, that the charge, taken as a whole, was not open to exception ; and that a request, after the charge was given, to limit the meaning of the words "interest," "participate," and "co-operate" was rightly refused.

When a ruling has once been given, the judge is not bound to repeat it.

The refusal of the judge, at the trial of a complaint under Pub. Sts. c. 101, §§ 6, 7, to read or state the substance of those sections to the jury, the nature of the offence having been sufficiently stated in the charge, affords the defendant no ground of exception.

COMPLAINT to the First District Court of Eastern Middlesex, for keeping and maintaining a common nuisance, namely, a tenement used for the illegal keeping and illegal sale of intoxicating liquors, between January 10 and March 9, 1896. Trial in the Superior Court, before *Richardson*, J., who allowed a bill of exceptions, in substance as follows.

The defendant admitted that the building referred to in the evidence was used as a place where liquor was illegally sold during the time covered by the complaint. The evidence, which was uncontradicted, showed that the building was then owned and occupied, and had been for a number of years, by one Hannah Carey, who had used the building as a dwelling-house, and had kept liquor there for sale for a number of years ; that she was a widow, and, during the time covered by the complaint, the defendant, who was her daughter, lived in her house ; that the house

was known as Carey's; that the furnishings of the house were the same as before the defendant went there to live with her mother; that the officers, on two occasions covered by the date of the complaint, went to search the premises with warrants, describing the house as the house of Carey; that on the first of these occasions, when the officers came to the house, the defendant opened the door, and, seeing who was there, closed it, and said, " No, you don't, Brown, I know you if you have got your moustache shaved off "; that the defendant was seen, when the officers got into the house, at a sink with a pitcher which smelled of whiskey, and the sink smelled of whiskey; that on this occasion Carey was present in the same room with the defendant; that on a subsequent occasion, February 3, the officers made a raid at the premises, and the defendant was there, and also Carey, who said, in the presence of the defendant, " If I was running the house, you would not take the pitcher from me that way "; that on the first occasion, which was January 23, Carey said, in the presence of the defendant, " I am not running this house "; and that the defendant said, " I do not want you to make out warrants against my mother, the second of January I took possession here, make out your warrants to me."

The witnesses for the government testified on cross-examination that they could see no change in the conditions about the premises from what they had been previously to January 2, or in the manner of conducting them, except the defendant's statements as above.

The defendant offered no evidence, but asked the judge to rule that, if the jury found that Carey owned and controlled the premises, and that the defendant was not shown to have been in control of the premises at any time, the jury would not be justified in returning a verdict of guilty; and that it was necessary to show that the defendant at some portion of the time embraced in the complaint controlled the premises in order to convict the defendant. The judge refused so to rule; and the defendant excepted.

The judge instructed the jury as follows : " This defendant is charged here with keeping what is popularly called a liquor nuisance, that is, a tenement or place used for the illegal sale of intoxicating liquors, and it is admitted by counsel for the de-

fendant that the house or place referred to was in fact such a nuisance during the time mentioned in the complaint, and it appears that the defendant lived there, occupied, in part at least, the house or place during that time. Now the building itself, merely as a structure, is not a nuisance, nor is the title or ownership a nuisance; that which makes a nuisance is the business carried on in it. So the question arises and is in this case, Who was responsible for that business and use of this house? Who carried it on? Who had control of it? Now, I think that in this kind of crime or offence, as in many others, a person may be guilty if he participates in it, if he is associated and shares in it and in the profit of it, and this defendant may be liable or guilty if she participated in the work of carrying on this place or house with the owner, or aided her mother in it, worked with her, and co-operated with her in it. To make one guilty of the offence charged, it is not necessary that it appear that he have the title, or even a lease in writing, or the sole control of the place. If the defendant carried on this business and house jointly with her mother, then, so far as I see, you can find her guilty of this offence, if she did that during any part of the time mentioned in the complaint."

The defendant excepted to these instructions, and asked the judge to limit the meaning of the words "interest," "participate," and "co-operate," as used therein. The judge refused so to do; and the defendant excepted.

The defendant asked the judge to rule that it was the keeping of the tenement or building which the defendant was charged with; and that it was the keeping of the building used as alleged in the complaint that the defendant was being tried for. The judge refused so to do, except so far as stated in the charge given.

The defendant asked the judge to read or state the substance of §§ 6, 7, of Pub. Sts. c. 101, to the jury, as being the chapter and sections under which this complaint was brought. The judge refused so to do.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*F. P. Curran*, for the defendant.

*F. N. Wier*, District Attorney, for the Commonwealth.

LATHROP, J. The defendant conceded that the tenement referred to in .the evidence was used as a place where intoxicating liquors were illegally sold during the time covered by the complaint. The issue for the jury was whether the defendant kept and maintained the tenement. While there was evidence that the defendant's mother then owned and occupied the tenement, and had sold intoxicating liquors there for several years, and that the furnishings of the house were the same after the defendant went to live with her mother as before, and no change in the conditions about the premises appeared, there was also evidence which would authorize the jury in finding that, during the time covered by the complaint, the defendant exercised control of the tenement either alone or jointly with her mother. The conduct of the defendant when the police officers made the first raid, and her failure to answer when her mother in her presence said, " If I was running the house, you would not take the pitcher from me that way," tend to show control on the defendant's part. Moreover, the evidence did not stop here; it also showed a direct admission made by the defendant that she was in exclusive possession of the tenement. On January 23, the mother said, in the presence of the defendant, " I am not running this house," and the defendant said, " I do not want you to make out warrants against my mother, the second of January I took possession here, make out your warrants to me."

The defendant offered no evidence, and the only exceptions are to the refusal of the court to give certain requests for instructions, and to the instructions given.

The first and second requests, if not defective for omitting the element of joint control, were fully covered by the instructions given.

The principal question relates to the charge. The judge began by saying, in substance, that the question was who had control of the business, and ended by saying that it was not necessary to show that the defendant had sole control; but if she. carried on the business jointly with her mother, she could be found guilty. This was a correct statement of the law. The difficulty comes from the intervening portion of the charge. If this is to be construed as stating the law to be that one who

aids and abets the keeper of such a nuisance as is set forth in the complaint in the case at bar may be convicted, the instruction was clearly wrong. *Commonwealth* v. *Churchill*, 136 Mass. 148. *Commonwealth* v. *Galligan*, 144 Mass. 171. *Commonwealth* v. *Murphy*, 145 Mass. 250. *Commonwealth* v. *Ryan*, 160 Mass. 172. But it seems to us that this is not the fair meaning of the language used. The context shows that, when the judge used the words complained of, he had reference to an interest, a participation, and a co-operation as a joint proprietor. See *Commonwealth* v. *Jennings*, 107 Mass. 488. There was nothing in the case to show that the defendant made any contention that she acted as the servant of her mother. There was no evidence to this effect, nor did she ask for any instruction based upon this theory. On the contrary, the evidence showed acts and declarations on her part indicating that she was in control of the premises. *Commonwealth* v. *Merriam*, 148 Mass. 425.

The remaining exceptions may be briefly disposed of. After the charge was given, the judge was asked to limit the meaning of the words "interest," "participate," and "co-operate." The defendant did not state how she wished them to be limited; and the word "interest" does not appear to have been used. Under the construction we have given to the charge, no further limitation was necessary.

The next exception relates to a request for a ruling which had already been given. When a ruling has once been given, the judge is not bound to repeat it.

The defendant then asked the judge to read or state to the jury the substance of §§ 6, 7, of the Pub. Sts. c. 101. The refusal of the judge to comply with this request affords the defendant no ground of exception. The nature of the offence was sufficiently stated in the charge. Whether a judge shall read or state the substance of a statute is a matter which must be left to his discretion. *Commonwealth* v. *Austin*, 7 Gray, 51. *Commonwealth* v. *Tay*, 146 Mass. 146. Section 7, which the defendant wished to have read or stated, in substance relates merely to the punishment of the offence, a matter with which the jury had no concern.

*Exceptions overruled.*