THE STATE OF KANSAS v. ARCH. LORD.

No. 618.

1. INTOXICATING LIQUORS—*Nuisance.* Evidence examined in a prosecution and conviction under section 39, chapter 101, General Statutes of 1897 (Gen. Stat. 1889, ¶ 2533), for keeping and maintaining a common nuisance, and held sufficient to support the verdict.

2. ——— *Common Nuisance—Keeper Defined.* It is not necessary in order to find the defendant guilty of keeping a common nuisance that he should have the sole custody of the place. He

17—8 KAN. APP.

may be charged, tried and convicted as the keeper of a place—a common nuisance—though he only assist in keeping the same. In misdemeanors under our statute all participants are principals. Any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal.

3. —————— *Nuisance Defined—Element of Duration.* A place where intoxicating liquors are sold, or kept for sale unlawfully, under our statute is a common nuisance, and this without regard to the time of its duration.

4. —————— *Instructions—Allegations of Information.* The court in its instructions failed to define a "common nuisance" and to declare who is "a keeper" of a common nuisance, but did define a common nuisance as alleged in the information. This is all that was required.

Appeal from Shawnee district court; Z. T. HAZEN, judge. Opinion filed December 15, 1898. Affirmed.

*L. C. Boyle,* attorney-general, and *A. P. Jetmore,* county attorney, for appellee.

*Safford & Williams,* for appellant.

The opinion of the court was delivered by

McELROY, J.: The appellant, Arch. Lord, was convicted under section 39, chapter 101, General Statutes of 1897 (Gen. Stat. 1889, ¶ 2533), of keeping and maintaining a common nuisance. The section under which he was prosecuted reads:

"All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of any of the provisions of this act, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of this act, are hereby declared to be common nuisances, . . . and the owner or keeper thereof shall upon conviction be adjudged guilty of maintaining a common nuisance, and shall be punished by a fine of not less than one hundred dollars

nor more than five hundred dollars, and by imprison-ment in the county jail not less than thirty days nor more than ninety days.''

The appellant was sentenced to thirty days in jail and to pay a fine of $100 and costs, and to stand com-mitted until the fine and costs were paid, from which conviction and sentence he appeals. He contends that the judgment of the trial court should be reversed for three reasons, which we will consider in the order presented.

First, it is claimed that the verdict of the jury is not supported by the evidence and is contrary thereto. The evidence shows that the building designated in the complaint consisted of two rooms on the first floor, and a basement. The front room on the first floor was used as a cigar store, the rear room as a billiard hall. In the basement were a counter or bar, made of planed boards, a beer pump, some glasses, a couple of gambling tables, some chairs, and beer. There were two persons behind the bar supplying patrons with beer which was drunk on the premises. The two men behind the counter, or bar, on the after-noon of Tuesday, the —— day of September, 1897, sold and dispensed beer over the counter, which was drunk by fifteen or more persons. The basement room was therefore a place where intoxicating liquors were sold to customers ; where persons were permitted to resort for the purpose of drinking intoxicating liquors as a beverage ; and was fitted up with the usual paraphernalia of a ''joint,'' or saloon, includ-ing a bar, with beer pump attached, from which beer was dispensed to numerous customers who were buy-ing and drinking it. The contention is made that the appellant was not the person who sold the beer, therefore not the keeper of the place. The basement

was reached by an inside stairway from the billard hall. E. B. Wood, a barber, testified that he had known Lord for about a year; knew where his place was, and rented of him the privilege of placing a barber chair in his establishment. Two witnesses, Pond and McFall, testified that they each purchased, on the date in question, beer from Lord; that he sold beer to several other persons at the same time and place; and that he was there in person behind the counter or bar, with his hat and coat off, waiting on customers; that one of the witnesses addressed Lord by name; that the place was generally known as "Lord's place"; and that there was one other person behind the counter also waiting on customers. These witnesses both testified that on the afternoon in question Lord was clean shaven, with a few days' growth of mustache. The defendant called a witness, Wood, who testified that he was a barber; that he had put his barber chair in Lord's place about the 10th of October, 1897, and kept the chair there six weeks; that Lord was a customer of his; and that during that time he wore a heavy mustache. A witness, McNair, who testified that he had known Lord for five years, said that at the date in question he had a heavy mustache. It appears that the testimony was conflicting on the question of whether Lord wore a mustache at that time. This controversy over the mustache seems to have been far-fetched, and of little weight in determining any material issue in the case. The jury may have believed the defendant had a much heavier mustache than the state's witnesses described, yet the matter was of no importance if they believed him to be the keeper of the place.

The contention is further made that the beer sold was not intoxicating. The witnesses Pond and McFall

both tesified that the beer they drank did not intoxicate them or make them drunk; that they bought and drank three glasses while they were in the place; and that several other persons bought and drank beer during the same time.   Beer is presumed to be intoxicating.   Proof of a sale of beer is proof of a sale of intoxicating liquor within the meaning of the law. It is not necessary for the state in the first instance to prove that beer is intoxicating, for it is presumed in law to be intoxicating until the contrary is shown. If we allow that the jury found all that the defendant claimed to show concerning the beer being non-intoxicating, there is still plenty of evidence to support the verdict.   While the testimony of Pond and McFall would tend to show that the beer they drank was not intoxicating, there is no evidence tending to show that the beer drunk by the other customers and patrons of the place was not intoxicating.   The jury had the right to presume that the beer drunk by the other customers was intoxicating, since there was no evidence tending to show that it was not intoxicating.   It is uncontradicted that the witnesses for the state paid for and drank beer in the place of which the defendant was at least one of the keepers; that the defendant and another person at the same time sold and delivered beer to about fifteen other persons, and that many persons resorted there for the purpose of drinking beer as a beverage.   There is no pretense of any testimony tending to show that the beer drunk by others than Pond and Mc Fall was a non-intoxicating beer.

It is further contended by counsel, that as the defendant was acquitted under the counts of the information charging sales to Pond and McFall, he could not be found guilty of the offense of keeping and maintaining a nuisance.   Our supreme court has de-

cided this contention adversely to the claim of the defendant in the cases of *The State v. Dugan*, 52 Kan. 23, 34 Pac. 409, and *The State v. Lund*, 51 Kan. 124, 32 Pac. 926. The charge of keeping and maintaining a nuisance is entirely separate and distinct from the charge of selling intoxicating liquors, even though included in the same information. The jury might very properly acquit the defendant on the charge of making sales, and yet convict him on the charge of keeping and maintaining a nuisance. Section 39, chapter 101, General Statutes of 1897, relating to nuisances, reads :

"All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of any provisions of this act, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of this act, are hereby declared to be common nuisances. . . ."

It was not necessary under the nuisance count of the information in this case for the state to prove any sales. In *The State v. Reno*, 41 Kan. 684, 21 Pac. 807, the court said :

" In cases like the present, a showing of a mere keeping of intoxicating liquors for sale, or a keeping of a place 'where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage,' is sufficient, under the statute, to render the place where the liquors are kept or where the persons are permitted to resort a nuisance, and to render the keeper thereof guilty of keeping a nuisance."

The verdict of the jury is sustained by the evidence.

It is next urged that the verdict of the jury is contrary to law. It is here contended that the evidence

fails to show that the defendant Lord had either the control, possession, management, care, custody, superintendency or charge of the basement, and, therefore, that he was not the keeper thereof. The evidence shows very clearly that the defendant Lord kept or assisted in keeping the place. Pond testified that the defendant Lord had his coat and hat off, and was behind the bar waiting on customers and dispensing beer at the place charged in the information. McFall testified to the same effect. These witnesses both testified that they paid money to the defendant on two or three occasions for beer purchased and drunk on the premises. The witness Wood testified that he rented the place for his barber chair of Lord. The evidence shows that Lord was at least one of the persons in charge of the business. It was not necessary, in order to find the defendant guilty as keeper, that he should have the sole custody of the place. A defendant may be charged, tried and convicted as the keeper of a place, a common nuisance, even though he only assist in keeping the same. In misdemeanors, under our statute, all participants are principals. Any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal.

The contention is further made by the defendant that the place described in the information was a temporary one, in operation for only about half an hour, and therefore was not a nuisance as contemplated by the law, and that the defendant could not be convicted of keeping and maintaining the place for that short length of time. We are unable to see any force in this argument. If a party can operate a saloon or "joint" for thirty minutes without violating the prohibitory law, by what force of reasoning

would the next thirty minutes aggravate the offense? There is no merit in this contention. Such a place as the one described by the witnesses during the thirty minutes of their presence in the basement is just such a place as our statute declares to be a common nuisance, and this without regard to the time of its duration. The verdict is not contrary to the law.

It is claimed that the court erred in its instruction. The only instruction of which complaint is made reads : "Every place where intoxicating liquors are sold in violation of law is a common nuisance within the law of this state ; and every person who keeps and maintains such a place is guilty of keeping and maintaining a common nuisance." This instruction correctly states the law applicable to the case at bar. The defendant, by way of argument and illustration, assumes a case to which he says the instruction would not be applicable. We concede that the instruction would not be applicable to the assumed case. The defendant must remember, however, that the assumed case presented is not the case on trial. Instructions should be given which are applicable to the questions at issue in the case on trial. It is further contended that the court erred in not defining "a common nuisance," and in not declaring who is "a keeper" of a common nuisance. The court defined the only kind of common nuisance over which there was any controversy. (*The State v. Pfefferle*, 36 Kan. 90, 12 Pac. 406, and cases there cited.)

From what we have said it follows that the motion for a new trial was properly overruled.

The judgment is affirmed.