| 108 | 205 |
| 109 | 539 |

| 108 | 205 |
| 127 | 346 |

THE STATE OF IOWA V. M. SNYDER, Appellant.

**Illegal Sale of Liquor Bills of Lading.** A banker selling bills of lading at his bank to whoever might apply, thereby enabling the purchasers to obtain intoxicating liquors at a freight depot, is guilty of selling the liquors; such dealings precluding him from asserting that he was a mere collecting agent for the consignors of the liquors.

NUISANCE: *Defendant owning neither liquor or building.* He is also guilty of maintaining a nuisance defined as using a building in which intoxicating liquors are sold unlawfully, though he owned neither the building nor the liquors.

*Appeal from Poweshiek District Court.*—HON. D. RYAN, Judge.

SATURDAY, APRIL 8, 1899.

INDICTMENT for keeping a liquor nuisance. From a verdict and judgment of guilty, defendant appeals.—*Affirmed.*

*D. W. Norris* and *W. R. Lewis* for appellant.

*Milton Remley, Attorney General,* and *J. W. Carr, County Attorney,* for the State.

DEEMER, J.—Defendant is accused of using a building or place in Poweshiek county for the purpose of unlawfully keeping and selling certain intoxicating liquors therein, and of unlawfully selling intoxicating liquors therein. He is a banker at Grinnell, and as such is charged with having made the sales in question. There is evidence tending to show that various dealers in intoxicating liquor living in Chicago and Rock Island, Illinois, and Oskaloosa, Iowa, shipped intoxicating liquor to Grinnell, Iowa, consigned to themselves. Bills of lading were issued, showing that the shippers were consignees, and these bills, accompanied by sight drafts, were forwarded to the defendant. The

drafts were drawn upon various parties, who were ostensibly residents of the city of Grinnell. Some of these parties called upon the defendant, paid their drafts, and received bills of lading for the goods. Armed with this evidence they would go to the railroad depot, and receive the liquors which were consigned by the aforesaid liquor dealers. Some of the witnesses testified that they went to the bank and asked for a bill of lading; that defendant said he had bills for different prices, and asked them which they wanted; that, upon witness indicating his choice, defendant would accept the money, turn over the bill of lading for the goods, and that witness would then go to the railroad depot and get a box of whisky. Some of them said that they had ordered no liquor, and had received no notice from the shipper that any liquor had been sent; and, if these witnesses are to be believed, it is apparent that no notice was taken of whom the drafts were drawn upon, or of any of the usual formalities incident to the collection of a bill of exchange. Whoever called, and was willing and able to pay the price, was accommodated, and received his bill of lading, after indicating how much he was willing to pay. We say there is evidence tending to show these facts, and the jury were justified in finding them to be true, although the defendant insists that he had no other connection with the transaction than simply as a collecting agent. Defendant kept no liquor at his bank. It was all at the depot, awaiting proper presentation of bills of lading before delivery.

It is contended in argument that, while it may be true that defendant was guilty of selling intoxicating liquor, he was not guilty of maintaining a nuisance, and that the jury should have been so instructed. The crime of nuisance consists in the keep or use of a building or place in which intoxicating liquors are kept with unlawful intent, or are sold for forbidden purposes. It is the use of a place in which the inhibited acts are done, rather than the doing of these acts, that constitutes the offense. Now, with the practical concession that there was sufficient evidence to

justify the defendant's conviction of the crime of selling intoxicating liquors contrary to law, or of keeping such liquors with intent to sell the same unlawfully, the only question for solution is, did the defendant keep or use a building or place for that purpose? The authorities furnish no uncertain answer to this proposition: In the case of *State v. Arnold,* 98 Iowa, 253, it is said: "It, of course, is to be understood that it is not necessary to prove that the defendant was the owner, or even that he was a lessor under a formal lease. It is sufficient if he is shown to have been maintaining a nuisance, and the ownership, or even the rightful possession, of the property, is not a material question." Again, in *State v. Briggs,* 81 Iowa, 585, the defendant kept a blacksmith shop in which he gave orders for liquor upon the railroad company, and upon which he received the liquor. In passing upon that case we said: "Without holding that a sale in one place, and a delivery in another, would make the place where the sale was made a nuisance (which question we in no manner determine), we do say that it was proper to show the use to which the shop was put, in connection with the keeping and selling of liquors, as bearing on the question whether or not it was being maintained as a nuisance." In the case of *State v. Viers,* 82 Iowa, 397, we further said: "If one house is used for the sale of intoxicating liquors which are kept in another, there can be no doubt that both are nuisances. If the liquors were kept in a house not occupied by the defendant, yet sold in a house occupied by him, he was guilty of committing a nuisance by making sales of liquor." We have further held that one may be guilty of nuisance, although he owned neither the liquor nor the place where the same was sold. *State v. Herselus,* 86 Iowa, 214. In that case we said: "The purpose prohibited is keeping for sale or selling intoxicating liquors in violation of the law of the state. The defendant was concerned, engaged, and employed in keeping liquors in that place for that purpose, and therefore was using the place for a purpose prohibited by the preceding section,"

From these citations it clearly appears that use of a building or place for the prohibited purpose rendered it a nuisance, although the party charged owned neither the liquors nor the place. In this case the court instructed the jury as follows: "A building in which intoxicating liquors were in fact sold unlawfully, or in which intoxicating liquors are kept for the purpose of sale or exchange unlawfully, is a nuisance, and, in order to make out the offense, the presence of intoxicating liquors is essential and necessary. If one house is used for the sale of intoxicating liquors which are kept in another, there can be no doubt but both are nuisances. If the liquors were kept in a house not occupied by the defendant, yet sold in a house occupied by him, he was guilty of committing a nuisance by making a sale of liquors." This instruction seems to be in accord with the law as announced in the foregoing cases, and, as there was ample evidence upon which to base such a charge, there was no error.

No complaint is made of the court's ruling denying defendant's application to require the state to elect as to which building it claimed was the nuisance, and, as the indictment did not more particularly describe the building than to say it was in Poweshiek county, the defendant was properly convicted if the jury found he kept a nuisance in either the railroad depot or the banking house. We discover no error in the record, and the judgment is AFFIRMED.