A. BELL, Appellee, v. W. S. HAMM, ET AL., Appellants.

**Mulct law:** VIOLATION: SEPARATE WAREHOUSE.  The maintenance of
a cold storage warehouse separate and removed from defend-
ant's saloon, in which defendant stored beer in carload lots and
removed the same to his saloon as needed, is prohibited by
Code, section 2448, providing that the selling or keeping for
sale of intoxicating liquors shall be confined to a single room.

*Appeal from Cass District Court.*— HON. O. D. WHEELER,
Judge.

WEDNESDAY, NOVEMBER 23, 1904.

ACTION in equity to enjoin an intoxicating liquor nui-
sance.  There was a decree as against defendant W. S.
Hamm, and he appeals.— *Affirmed.*

*De Lano & Meredith,* for appellant.

*James B. Bruff,* for appellee.

BISHOP, J.— The defendant and appellant, W. S.
Hamm, operates a mulct saloon in the city of Atlantic, this
State.  Save in the respect presently to be taken note of,
it is conceded that all the requirements of law relative to
the conduct of such places have been complied with.  Some
time before the commencement of this action the Hamm
Brewing Company, of whom appellant purchased all the
beer dispensed by him in his saloon, erected near the rail-
way tracks in said city a cold storage warehouse sufficiently
large to hold a car load of beer, and gave the use thereof over
to appellant for the storage of beer.  Appellant purchased
beer in car-load lots, and upon receipt of each car the beer
was put into storage in said warehouse.  Thereafter it was

removed to his saloon, several blocks distant, at such times and in such quantities as the trade there demanded. The warehouse was kept locked, and it is conceded that no sales or delivery of beer were ever made, or intended to be made, therefrom, or otherwise than at the saloon. Based upon these facts, it is the contention of appellee that the use of the warehouse by appellant in connection with his saloon constitutes a nuisance, because violative of subdivision 4, section 2448, of the Code — a part of the mulct law, so called. The provision invoked has relation to the place in which the traffic in intoxicating liquor may be conducted, and therein it is specified that " said selling or keeping for sale  *  *  * shall be carried on in a single room having but one entrance or exit." Accordingly we have the question whether one who is engaged in operating a mulct saloon may lawfully use a storage warehouse situated apart from and wholly unconnected ,with his saloon proper for the sole purpose of storing liquors until such time as they may be needed to supply the demands of his saloon trade.  . The answer to this question naturally enough depends upon the construction to be given the language found in the statute, and what is to be said as to the nature and extent of the requirement made thereby. Intoxicating liquor statutes are to be given a liberal construction, to the end that evasions may be prevented. As an aid to construction, we are authorized to take into account the state of the law as pre-existing, the character of the right sought to be conferred or the mischief intended to be guarded against, and the means provided therefor. We may also consider all matters of fact inherent in the conditions to be affected, and which are so far general in character that it must be presumed the Legislature had knowledge thereof, and therefore considered the same in determining upon the scope and effect of the enactment.

Now, it is easily remembered that prior to the mulct law the traffic in intoxicating liquors, with an exception not necessary to be here considered, was wholly forbidden. Quite

evidently the Legislature reached the conclusion that the interest and welfare of the State required that, in localities where demanded, the traffic should be tolerated, if not directly authorized. By the passage of the mulct law the rule theretofore in force was broken in upon, to the extent that it is now provided that, certain conditions and requirements being complied with, no person engaging in the traffic shall be subjected to the penalties prescribed in the general statute. We think it fair to say that the Legislature must have contemplated that in certain places, at least, the prescribed conditions would be complied with, and that divers and sundry persons would engage in the traffic. Indeed, the law, upon its face, invites a re-entry of the open saloon; and, while withholding a welcome, it promises toleration and protection. It must be said further that the lawmaking power expected that with the saloon there would come many, if not all, of the evils that are generally attributed thereto. And evidently it was recognized that the maximum of such evils generally speaking, is reached when the business is carried on in dark, unfrequented, or out of the way places; that the minimum may be hoped for only by confining the places of traffic to business districts, and each place being so arranged that every passerby may see all transpiring therein. Absolute publicity, then, seems to be the dominating thought of the statute. In effect, the declaration is that he who keeps for sale and he who sells shall do so without subterfuge or evasion, and in the full gaze of all with whom concern may lead to scrutiny. No other reason for the provision presents itself to our minds, or is suggested in argument by counsel. Accepting such to be the purpose of the statute, we come to the question, what is meant by the language found therein, " said selling or keeping for sale shall be carried on in a single room," etc. ? We think there can be but one answer to this question. Put in plain language, the Legislature has said to all who may propose to engage in the traffic that the right to do so shall be subject to the imperative condition

that the business of keeping liquors intended to be sold, as well as the business of selling, on the part of any particular dealer, shall be confined to one room. It is immaterial, therefore, that in this particular case it does not appear that any sales had been made or are intended to be made from the warehouse. The business — and this includes keeping for the purpose of sale as well as the selling — must be carried on within the four walls of a single room.

It is suggested on the part of appellee that it must have been within the legislative contemplation that if the right were conceded to every saloon keeper to store liquors in one or a hundred places outside of his saloon, and in and out of the way places, it would not only make illicit traffic possible, but altogether probable. However this may be, we are disposed to believe that it was intended to guard against the possibility even, and we think the Legislature has spoken clearly. This being true, it is our duty to enforce the law as we find it. If the restriction is harsh or unnecessary, it is for the Legislature to give relief, and not for the courts. The conclusion reached is in harmony with our former holdings. *Bartel v. Hobson,* 107 Iowa, 644; *Cameron v. Fellows,* 109 Iowa, 534; *Carter v. Miller,* 111 Iowa, 457; *Carter v: Bartel,* 110 Iowa, 211; *State v. Bussamus,* 108 Iowa, 11; *Ritchie v. Zalesky,* 98 Iowa, 589; *Powers v. Klatt,* 111 Iowa, 357; *Garrett v. Bishop,* 113 Iowa, 23; *State v. Viers,* 82 Iowa, 397; *State v. Snyder,* 108 Iowa, 205. The recent case of *State v. Donahue,* 120 Iowa, 154, is not in conflict. What we there held was simply that a place for refrigeration might be partitioned off from the saloon room, if thereby the one-room effect was not destroyed, and such refrigerator was not adapted to or fitted up as a salesroom, and could not be resorted to for that purpose.

We think the decree of the trial court was warranted, and it is *affirmed.*