## STATE OF NORTH DAKOTA v. ARTHUR E. DAHMS.

### (149 N. W. 965.)

**Common nuisance — conviction — not principal in crime — aided and abetted — instruction to that effect — prejudicial error.**

1. Appellant was convicted of the crime of maintaining a common nuisance.

Concededly, there was no evidence introduced proving, or tending to prove, that he was a principal in the unlawful transaction, it being the state's contention merely that he aided and abetted another in the commission of the crime charged.

*Held*, that there is no evidence to support such contention, and that it was therefore prejudicial error to instruct the jury that they might convict the defendant upon the theory that he aided and abetted another in keeping and maintaining such nuisance.

**Offense — unlawful keeping and maintaining a place — one must be owner or keeper.**

2. Following prior decisions of this court, which are cited in the opinion, construing § 10,117, Comp. Laws 1913 (Rev. Codes 1905, § 9373), *Held*, that the offense therein defined is the unlawful keeping and maintaining of a *place* where certain prohibited acts are committed, and no one except the *owner* or *keeper* of such place can be adjudged guilty of such offense.

Opinion filed November 25, 1914.

Appeal from District Court, Stark County; *W. C. Crawford, J.*

From a judgment of conviction of the crime of keeping and maintaining a common nuisance, defendant appeals.

Reversed.

*Geo. R. Robbins* and *Geo. R. Bangs,* for appellant.

Where the statutes distinctly limit the punishment to persons who participate in the act only in a certain way, they furnish the rule for the court. 1 Bishop, New Crim. Law, § 657, subdiv. 2.

A person who by acts induces a crime is not punishable unless the statute upon such crime makes him so: Anderson v. South Chicago Brewing Co. 173 Ill. 213, 50 N. E. 655; Bishop, Crim. Law, § 657; State v. Cullins, 53 Kan. 100, 24 L.R.A. 212, 36 Pac. 56; Jones, Chat. Mortg. § 458; Cobbey, Chat. Mortg. § 637; Gage v. Whittier, 17 N. H. 312; Pratt v. Maynard, 116 Mass. 388.

So with statutes penalizing certain sales, where they have not been held to apply to vendees. State v. Cullins, 53 Kan. 100, 24 L.R.A. 212, 36 Pac. 56; State v. Turner, 83 Kan. 183, 109 Pac. 983; Wakeman v. Chambers, 69 Iowa, 169, 58 Am. Rep. 218, 28 N. W. 498; Sterling v. Jugenheimer, 69 Iowa, 210, 28 N. W. 559.

The keeping and maintaining of a place, etc., constitutes the crime of keeping a common nuisance. The owner or keeper only can be punished.

State ex rel. Kelly v. McMaster, 13 N. D. 58, 99 N. W. 58; State v. Dellaire, 4 N. D. 312, 60 N. W. 988; State v. Rozum, 8 N. D. 548, 80 N. W. 477; Com. v. Wood, 97 Mass. 225; Com. v. Carroll, 124 Mass. 30; Hunter v. State, 14 Ind. App. 683, 43 N. E. 452; Rev. Codes, 1905, § 2764; State v. Thoemke, 11 N. D. 386, 92 N. W. 480; State v. Kruse, 19 N. D. 203, 124 N. W. 385; State v. McGillic, 25 N. D. 27, 141 N. W. 82; Laws of 1907, chap. 193.

There must be a proprietorship or control, or keeping. Com. v. Galligan, 144 Mass. 171, 10 N. E. 788; Com. v. Murphy, 145 Mass. 250, 13 N. E. 892; Plunkett v. State, 69 Ind. 68; State v. Gravelin, 16 R. I. 407, 16 Atl. 914; Com. v. Churchill, 136 Mass. 148.

It is not for the jury to say what evidence it will believe and what it will not believe. McPherrin v. Jones, 5 N. D. 261, 65 N. W. 685, 38 Cyc. 1735; 2 Thomp. Trials, 2d ed. § 2423, p. 1687; 24 Cyc. 193; Hartford Life & Annuity Ins. Co. v. Gray, 80 Ill. 31; 3 Brickwood's Sackett, Instructions to Juries, §§ 3380 et seq.; Evans v. George, 80 Ill. 51; McMahon v. People, 120 Ill. 584, 11 N. E. 883; Chicago, B. & Q. R. Co. v. Roberts, 35 Colo. 498, 84 Pac. 68; Underhill v. Chicago & G. T. R. Co. 81 Mich. 43, 45 N. W. 508; Fruit Dispatch Co. v. Russo, 125 Mich. 306, 84 N. W. 308; Drew v. Watertown Ins. Co. 6 S. D. 335, 61 N. W. 34; Georgia, S. & F. R. Co. v. Thompson, 111 Ga. 731, 36 N. E. 945; Lomer v. Meeker, 25 N. Y. 361, with citations in 3 N. Y. Anno. Dig. 341; 11 N. Y. Anno. Dig. 845 et seq.

*J. P. Cain,* State's Attorney, *Andrew Miller,* Attorney General, *Alfred Zuger,* and *John Carmody,* Assistant Attorneys General for the State.

A person, though not the owner or keeper of a common nuisance, but who resides at such place, and knowingly allows another to conduct such a nuisance therein, is guilty of the offense. State v. Rozum, 8 N. D. 548, 80 N. W. 477; State v. Ekanger, 8 N. D. 559, 80 N. W. 482; State v. Herselus, 86 Iowa, 214, 53 N. W. 105.

Aiding and assisting another in the sale of intoxicating liquors in any manner, however slight, renders such aider guilty. State v. Snyder, 108 Iowa, 205, 78 N. W. 807; Webster v. State, 110 Tenn. 491, 82 S. W. 179; Phillips v. State, 95 Ga. 478, 20 S. E. 270; State v. Lord, 8 Kan. App. 257, 55 Pac. 503; Buchanan v. State, 4 Okla. Crim. Rep. 645, 36 L.R.A.(N.S.) 83, 112 Pac. 32.

Any person who aids or abets in the commission of such offense is guilty as a principal. 23 Cyc. 209, ¶ G.; 1 R. C. L. 139; McLain v. State, 43 Tex. Crim. Rep. 213, 64 S. W. 865; 12 Cyc. 187.

It is the duty of the jury to find the facts from the testimony of the witnesses, and the instruction of the court was proper. 1 Brickwood's Sackett, Instructions to Juries, §§ 327 et seq.; State v. McPhail, 39 Wash. 199, 81 Pac. 683; State v. Thoemke, 11 N. D. 386, 92 N. W. 480; State v. Moran, 112 Iowa, 535, 84 N. W. 524; Cupps v. State, 120 Wis. 504, 102 Am. St. Rep. 996, 97 N. W. 210, 98 N. W. 546; Zube v. Weber, 67 Mich. 52, 34 N. W. 264; Knox v. Knox, 123 Iowa, 24, 98 N. W. 468.

Fisk, J. Appellant was convicted in the lower court of the crime of keeping and maintaining a liquor nuisance, and was sentenced to imprisonment in the county jail for ninety days, and to pay a fine, including costs, of $600. He has appealed from the judgment. Prior to the pronouncement of judgment, defendant moved, both in arrest of judgment and for a new trial, upon numerous grounds, among which are alleged insufficiency of the evidence to warrant the verdict, and alleged erroneous instructions to the jury prejudicial to the defendant. These are the only grounds which we need notice.

It is conceded on the part of the state's counsel, as we understand them, that there is no competent testimony in the case to warrant a finding that defendant was a principal in keeping and maintaining the nuisance, their contention being that he merely aided and abetted another in so doing, and this appears to have been the view of the learned trial judge, who instructed the jury as follows:

"Under the statutes of North Dakota there is no distinction between the principal and accessories to a crime, and I will read to you that particular section: 'All persons concerned in the commission of a crime, whether it is a felony or a misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, are principals in any crime so committed.' So you will see, gentlemen of the jury, that all persons stand on the same footing, who actually commit the crime, if any, or who aid and abet in the commission of the same.

"Now, the questions for you, gentlemen of the jury, to determine in

this case, are whether or not there was a place kept where intoxicating liquors were sold as a beverage, or where persons were permitted to congregate for the purpose of drinking intoxicating liquors, or where intoxicating liquors were kept for sale. First, to determine whether or not there has been a place kept and maintained, second, who kept and maintained such place; and, third, whether or not this defendant kept and maintained the place, or aided and abetted in the keeping and maintaining of such a place.

"If you find from the facts in this case that at the stockyards near Taylor, in this county and state, there was a nuisance kept and maintained on the 4th of July, 1912, and that this defendant, while not actually keeping the place, yet aided and abetted in the keeping of the same, then you should find the defendant guilty as charged in the information; but unless the state has proven each of these facts to your satisfaction, beyond a reasonable doubt, then the defendant is entitled to be acquitted.

"Now, gentlemen, I think this covers about all the law for you to determine in this case as to whether or not, under the statutes of this state, this defendant has committed the offense with which he stands charged. Whether or not he committed the crime, or aided and abetted in its commission, makes no difference, he is equally guilty. The person who actually commits the crime, and the person who aids and abets in the commission of the crime, are jointly guilty of the offense."

Without quoting from the testimony it will suffice to merely state that it is wholly insufficient to sustain the conviction except upon the theory that defendant aided and abetted in the commission of such crime. There is concededly a total lack of proof that defendant had any proprietary interest in the keeping or the maintaining of the nuisance, or that he was, even for an instant, in charge or control thereof; nor was he instrumental in the least in directly aiding or assisting in the actual sales of liquor on the premises constituting such nuisance. If, however, the giving of the instruction above quoted was proper as a matter of law, then, for the purposes of this appeal, it may be conceded that the evidence was such as to warrant a conviction thereunder.

The state relies, in support of the correctness of the instruction, upon the following authorities: State v. Rozum, 8 N. D. 548, 80 N. W. 477; State v. Ekanger, 8 N. D. 559, 80 N. W. 482; State v. Herselus, 86

Iowa, 214, 53 N. W. 105; State v. Snyder, 108 Iowa, 205, 78 N. W. 807; Webster v. State, 110 Tenn. 491, 82 S. W. 179; Phillips v. State, 95 Ga. 478, 20 S. E. 270; State v. Lord, 8 Kan. App. 257, 55 Pac. 503; Buchanan v. State, 4 Okla. Crim. Rep. 645, 36 L.R.A.(N.S.) 83, 112 Pac. 32; McLain v. State, 43 Tex. Crim. Rep. 213, 64 S. W. 865.

A brief analysis of these cases will, we think, disclose that they are not in point, and do not support the state's contention.

In the Rosum Case the court inferentially held against the contention of the state in the case at bar by placing its decision upon the ground that the husband, who was prosecuted for keeping and maintaining a common nuisance, was guilty of *keeping* and *maintaining* such nuisance, because of the fact that he was the head of the family, and knowingly suffered intoxicating liquors to be kept for sale or sold as a beverage in his home, and knowingly suffered persons to resort thereto for the purpose of drinking intoxicating liquors contrary to law. By placing the decision upon the ground that by his conduct he kept and maintained the nuisance, instead of upon the ground that he aided and abetted his wife in keeping and maintaining the same, it is apparent that the court did not consider the fact that he aided and abetted his wife in the unlawful enterprise, of any controlling importance. In the Ekanger Case the court on this point merely adheres to its prior decision in the Rosum Case.

The Iowa cases are readily distinguishable from the case at bar, on the ground that the Iowa statute differs from that in this state. Our statute (§ 10,117, Comp. Laws 1913, Rev. Codes 1905, § 9373) provides: "All places where intoxicating liquors are sold, bartered, or given away, in violation of any of the provisions of this chapter, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter, or delivery in violation of this chapter, are hereby declared to be common nuisances . . . and the *owner* or *keeper* thereof shall, upon conviction, be adjudged guilty of maintaining a common nuisance." This section has been construed in numerous cases in this court, and it is firmly settled that the offense therein defined consists of the *keeping* and *maintaining* of the place. State v. Dellaire, 4 N. D. 312, 60 N. W. 988; State v. Thoemke, 11 N. D. 386, 92 N. W. 480; State

v. McGillic, 25 N. D. 27, 141 N. W. 82; State v. Kruse, 19 N. D. 203, 124 N. W. 385.

In the opinion by Mr. Justice Carmody in the latter case it was said: "The selling of intoxicating liquors contrary to the provisions of this act does not constitute the offense, nor does the keeping of intoxicating liquors for sale, contrary to the provisions of this act constitute the offense. Neither is the offense committed by permitting persons to resort to the place for the purpose of drinking intoxicating liquors as a beverage. They are evidences of the offense. It is keeping the place where these things, or some of them, are done, that constitutes the offense. Proof of keeping by the defendant, and that any one of the prohibited acts was done by the defendant in such place during such keeping, would make the offense complete."

In the more recent case of State v. McGillic, this court, in speaking of the object and purpose of the above section, says: "That law is aimed primarily at a place wherein is permitted the commission of acts violative of the prohibition law, the statute condemning the place of the violations by declaring it to be a common nuisance. The person in control or charge, whether temporarily or continuously, is the keeper of such nuisance and the person punishable for its maintenance. . . . Under the law prior to chapter 193 [Laws 1907] the owner might lease to a tenant, or permit an occupant to use, control, and occupy a place wherein a nuisance might be maintained by such lessee, occupant, or person in control, without the owner being criminally liable, unless the state could prove such facts as would render the owner liable as a joint principal in the unlawful business." This would seem to clearly negative the idea that a person who merely aids or abets another in the maintenance of a liquor nuisance can be adjudged guilty of violating said statute. It is, we think, entirely clear, under our statute, that a person cannot be guilty of maintaining a common nuisance unless it be shown that he kept or maintained the place. Even the fact that he may have aided and assisted the proprietor of the place in dispensing liquors contrary to law is not enough to fasten guilt upon him. Such a person, no doubt, would be guilty of the offense of selling intoxicating liquors contrary to law. Although he may as clerk or servant of the proprietor have aided and assisted him in conducting the place by making illegal sales of liquors, or in keeping such liquors for sale, and inducing persons to resort

to the place for the purpose of drinking the same as a beverage, he cannot be convicted of keeping and maintaining the nuisance unless it appears that during the time the same was kept and maintained he was in sole charge and control for some period of time. In the latter case he would be deemed the keeper, and would be guilty. Such we believe to be practically the universal holdings of the courts under similar statutes. Com. v. Galligan, 144 Mass. 171, 10 N. E. 778; Com. v. Murphy, 145 Mass. 250, 13 N. E. 892; Plunkett v. State, 69 Ind. 68; State v. Gravelin, 16 R. I. 407, 16 Atl. 914; Com. v. Churchill, 136 Mass. 148; Com. v. Burns, 167 Mass. 374, 45 N. E. 755.

The supreme judicial court of Massachusetts in the Churchill Case said: "The distinction between acts which amount to maintaining the nuisance, and those which do not, is one of degree. We do not think that the misdemeanor of unlawfully selling, committed by a servant, can be said as a matter of law to amount to maintaining a nuisance, unless he has assumed a temporary control of the premises, or in some other way emerged from his subordinate position to aid directly in maintaining it."

In the Galligan Case that court said: "It may not be necessary, in order to convict a defendant who is an agent of the proprietor, that he should have had the sole charge and control of the tenement, but the instruction given was that, if one of the defendants was the sole proprietor, and the other was present, aiding and abetting him 'in acts of proprietorship and control, both might be found guilty.' We think that this instruction was too indefinite, and may have misled the jury; and for this reason the exceptions are sustained. The defendants could be jointly found guilty only by proof that they jointly kept or maintained the nuisance charged. If one was sole proprietor, and the other only kept or maintained the nuisance as his servant, under his direct personal supervision, the latter could not be convicted. If, however, the servant, in carrying on the business of his employer, and in the absence of his employer, was authorized by him to make illegal sales of intoxicating liquors, and made such sales, both could be found guilty of maintaining the nuisance."

The Indiana court in the Plunkett Case held to the same rule as did the court in the other cases cited.

The gist of these holdings, as well as those of this court above cited,

is to the effect that there is no such thing as aiding and abetting another in the control of his property, for otherwise the opinions in these cases would have been written differently, and convictions of mere clerks and servants of the proprietors would have been sustained upon the theory that they aided and abetted such proprietor in the maintenance of the nuisance.

The cases cited by respondent from the state of Iowa are based upon a statute radically different from that in this state. The Iowa statute does not declare that the *keeping* or *maintaining* of a *place* for the illegal traffic shall alone constitute a nuisance, but it goes beyond this, and declares that "whoever shall erect, establish, continue, or *use* any building, erection, or place for any purposes herein prohibited, is guilty of a nuisance; . . . and the building, erection, or place, or the ground itself in or upon which such unlawful manufacture or sale or keeping with intent to sell, use, or give away said liquors, is carried on or continued or exists, and the furniture, fixtures, vessels, and contents, are also declared a nuisance." Iowa Code 1897, § 2384. And § 2382 of same Code provides: "No one, by himself, clerk, servant, employee, or agent, shall, *for himself, or any person else,* directly or indirectly, or upon any pretense or by any device, manufacture, sell, exchange, barter, dispense, give in consideration of the purchase of any property or of any service or in evasion of the statute, or keep for sale, any intoxicating liquor, which term shall be construed to mean alcohol, ale, wine, beer, spirituous, vinous, and malt liquor, and all intoxicating liquor whatever, except as provided in this chapter, or own, *keep or be in any way concerned, engaged, or employed in owning or keeping* any intoxicating liquor with intent to violate any provision of this chapter, or authorize or permit the same to be done; *and any clerk, servant, employee, or agent engaged or aiding in any violation of this chapter, shall be charged and convicted as principal.*"

It will thus be seen that such statute not only penalizes the person who *keeps and maintains* the place, but also him who *uses* such place for the illegal purposes forbidden. This is made plain by a perusal of the opinions in the Herselus and Snyder Cases, as well as the earlier case of State v. Stucker, 33 Iowa, 395, in each of which cases the defendant was held upon the ground that he *used* the place for the illegal enterprise.

Both Maine and Texas have statutes similar to Iowa, which accounts

for the decisions in State v. Sullivan, 83 Me. 417, 22 Atl. 381, and Tardiff v. State, 23 Tex. 169. The cases cited from Tennessee and Georgia are clearly distinguishable from the case at bar, for the reason that they were controlled by facts differing from those in this case. The convictions in those cases were sustained upon the ground that the defendants were principals in the crime, and not that they aided and abetted others in their commission.

The case cited from Oklahoma is not in point. It involved merely the crime of making an unlawful sale of liquors, and not that of maintaining a liquor nuisance.

The case of State v. Lord, cited by respondent, was decided by the intermediate appellate court of Kansas under a statute like that in North Dakota, and in a portion of the opinion the contention of respondent seems to be supported. An examination of such opinion discloses, however, that what was said on the point here under consideration was unnecessary to the decision; for in an earlier portion of the opinion it was held that the evidence disclosed that Lord was a *keeper* of the place as a principal, having a proprietary interest therein. The portion wherein it is said, "A defendant may be charged, tried, and convicted as the keeper of a place, a common nuisance, even though he only assisted in keeping the same," was mere *obiter,* and entitled to but little weight. It is also significant that shortly thereafter the legislature amended the Kansas statute so as to read "every person who maintains or *assists* in maintaining such common nuisance shall be guilty," etc., thereby conforming the statute to the rule thus through a mere *dictum* announced by the appellate court in State v. Lord. See § 4387, Kansas Statutes 1909.

Even if it be conceded, contrary to the concession of respondent's counsel, that there was evidence sufficient to warrant the jury in finding that defendant was a joint principal with others in keeping such nuisance, still a new trial must be directed for the very obvious reason that the court erroneously instructed the jury to the effect that they might convict even though they found that defendant did not keep such nuisance as one of the principals. According to the positive testimony of one Wallace, a witness for the state, and who concededly conducted the nuisance, and which testimony the jury had a right to believe, this defendant had nothing whatsoever to do with the keeping and maintenance

of the nuisance, and had no interest therein. Yet in the face of such testimony the court explicitly charged the jury to the effect that it was their duty to convict, although they should find that defendant did not commit the crime as a principal offender, but merely aided and abetted, or, not being present, advised and encouraged, its commission. The jury evidently based its verdict upon the ground that defendant did not directly commit the offense, but merely aided and abetted Wallace in the commission thereof, for the record discloses that after deliberating for sometime they returned into court for further instructions upon the question of aiding and abetting, whereupon the following colloquy took place:

Juror: There is some question on the terms "aiding and abetting."

The Court: Aiding and abetting practically means the same thing, assisting, counseling, or advising. Under the law, aiding, abetting, or *assisting*, those three words are synonymous and mean the same thing. Anyone who *in any way* aids or assists in the commission of a crime, why then he is an aider and abetter under the law.

The Juror: Would this necessarily need to be previous to the 4th of July when the crime was committed?

The Court: It wouldn't have to be. Either before or at the time of the commission of the offense.

Thereafter the verdict was returned, finding defendant guilty and recommending *leniency*. It is fair to conclude, therefore, that the jury, at least, *may have* found that defendant's only connection with the crime consisted in his acts of purchasing the lumber for Wallace and bringing him a lunch, etc. Surely no lawyer would contend that such aiding and abetting would justify a conviction under the law, and yet the jury may, and probably did, understand the instructions that way, as not only justifying but requiring them to convict if they found beyond a reasonable doubt that defendant thus aided and assisted, or advised and counseled, Wallace with reference to his unlawful acts. It is no answer to this to say that the jury, nevertheless, was warranted under the circumstantial evidence in finding that defendant was the prime mover in such unlawful enterprise, and in fact was a principal in such crime, and partici-

pated in the fruits thereof; for the jury had a *right* to and *may* have viewed the evidence otherwise. Such circumstantial evidence might not, in the judgment of the twelve jurors, have outweighed the positive testimony of the state's witness, Wallace. We may also add that such recommendation in the verdict is hardly consistent with a finding by the jury that defendant was guilty as a principal, or otherwise than in a mere technical way, as the jury viewed it, by reason of having, to some degree, aided and assisted, or advised and counseled, Wallace in and about such unlawful venture.

It follows that the giving of the instructions complained of constituted prejudicial error, for which the judgment appealed from must be reversed and a new trial ordered.

BRUCE, J., dissenting. I am unable to concur in the majority opinion in this case. It seems to be assumed that because the defendant was charged as a principal he could not be convicted of aiding and abetting, and that one cannot, any way, aid and abet in the keeping and maintaining of a common nuisance. I can concur in neither of these propositions. There is, in the case at bar, quite conclusive evidence, not only that the whole scheme was the defendant's scheme, but that he was a party to the construction of the temporary shed, and was directly interested in the operation thereof. There is evidence that, about two weeks before the occurrence in controversy, he visited a banker in Taylor, and asked him "if the people in Taylor would want something to drink on the 4th, and would stand for something being sold," and that he stated that "if they wanted some he would arrange to have somebody there to sell it." A drayman testifies: "I worked for Bert Moore on the dray line and I was working for him on the 3d and 4th of July, this year. I knew the defendant, Dahms. I delivered some barrels, ice, and lumber and some cases. I guess I made three trips. I delivered four cases, and I think nine casks. Also a little dab of lumber, probably 50 or 60 feet. Dahms was at the stock yards when I was up there on one trip. Dahms paid me for hauling the lumber, ice casks, and cases. He is the defendant here. Wallace did not pay me anything. Dahms paid me $5 for the entire bill. The bill was $4.75, and Dahms paid me that *and a quarter tip*. I asked Wallace first for the money, and he said he didn't have any money, but I could go over to Dahms and get it, and I told

Dahms what Wallace had said to me, and Dahms gave me the money. Dahms was 50 or 60 feet from Wallace, right at the gate, at the time. I did not have any dispute with Dahms about the pay. This was about 11 or 12 o'clock that day. I got the lumber from the Mandan Mercantile yards. When I asked Wallace for the money, he said he didn't have the money yet, to wait a while, or I could go over to Dahms and get it. Wallace said he didn't have the money, but I could either wait for it or get it from Dahms. When I went over to Dahms I asked him about the money. I think he said that Wallace was supposed to pay it, and I told him he didn't have any money, and Dahms paid me. I don't think he talked to Wallace in the meantime. I don't think he did while I was there. Wallace did not come over with me, I went over and told him what Wallace said, and he paid me the bill and a quarter besides."

S. E. Bergland, a witness for the state, testified as follows: "I have lived in Taylor about a year, and I am manager of the Mandan Mercantile Company, and was such manager on the 4th of July last. The Mandan Mercantile Company sells lumber. I know the defendant Dahms when I see him. I sold Dahms 110 feet of lumber on July 4th. He paid me either $3.25 or $3.30, or $3. He paid me at the time he bought it. He said the dray would be around there to get it in a short while. That was the only lumber that I delivered to the dray that morning. When Dahms came to order the lumber he said he wanted some lumber, and I asked him what kind he wanted. He said he wanted some white boards. The lumber was a cash deal, and Dahms requested that I make out a bill of it to P. D. Wallace. I did that, and Dahms took the bill away with him. . . . We heard that they were selling beer out there, and we thought we would go and stop them. This was between 3 and 4 in the afternoon. We went out there, and I saw the defendant there. I saw this little shed or place back of which the beer was kept. The defendant was standing, I think he was standing up alongside of the fence at the end of the opening where those boards were; standing at one end of this little shed. Mr. Wallace was inside of the shed. There were people about the place, but they were standing further back. I was at the ball game that day, and I don't think I saw Dahms there at the ball game. I was down at the grand stand where the exercises were taking place, but I did not see Mr. Dahms down there at that time."

It is true that the witness Wallace testifies that the defendant was

merely acting as his agent in purchasing the lumber, and merely loaned the money to him to pay for the drayage, and that he was not interested in the maintenance of the establishment. Wallace, however, had already pleaded guilty to the crime of maintaining a nuisance, and it can hardly be claimed that the jury was not justified in looking upon his testimony with some suspicion. If, for instance, the defendant merely loaned the money for paying the drayage, why did he, without consulting Wallace, tip the drayman? And if he had no interest in the concern, why was he so solicitous about running errands, purchasing lumber, and obtaining and providing for Wallace's lunch? The evidence shows that a number of hundred dollars worth of beer must have been sold. When Wallace was arrested he had but $60 or $66 on his person. There is no evidence that he left the place during the day, before he was arrested. Such cases may be proved by circumstantial evidence, and I do not believe that anyone can read the evidence without being convinced that the prime movers were the defendant and the corporation which he represented. If the defendant Dahms was a party to the building of the structure and furnishing the place with beer and ice, and stood by and allowed the liquor to be sold therein which was furnished by his concern, and which he admits had not been paid for prior to the transaction in question, I am quite satisfied that he could be convicted as a joint principal in the undertaking. The jury would have been justified in finding that he and his concern looked to the profits of the enterprise for their compensation. It, it is true, is "no criminal offense to stand by, a mere passive spectator of a crime, even of murder. Noninterference to prevent a crime is not itself a crime. But the fact that a person was voluntarily and purposely present, witnessing the commission of a crime, and offered no opposition to it though he might reasonably be expected to prevent it, and had the power so to do, or at least to express his dissent, might, under some circumstances, afford cogent evidence upon which a jury would be justified in finding that he wilfully encouraged and so aided and abetted. But it would be purely a question for the jury whether he did so or not." Hawkins, J., in Rex v. Coney, 51 L. J. Mag. Cas. N. S. 78.

In the case of State v. Snyder, 108 Iowa, 205, 78 N. W. 807, it was held that "a banker selling bills of lading at his bank to whoever might apply, thereby enabling the purchasers to obtain intoxicating liquors at

a freight depot, is guilty of selling the liquors, such dealings precluding him from asserting that he was a mere collecting agent for the consignors of the liquors. He is also guilty of maintaining a nuisance, defined as using a building in which intoxicating liquors are sold unlawfully, though he owned neither the building nor the liquors." The court on page 206 says: "It is contended in the argument that while it may be true that defendant was guilty of selling intoxicating liquor, he was not guilty of maintaining a nuisance, and that the jury should have been so instructed. The crime of nuisance consists in the keep or use of a building or place in which intoxicating liquors are kept with unlawful intent, or are sold for forbidden purposes. It is the use of a place in which the inhibited acts are done, rather than the doing of these acts, that constitutes the offense. Now, with the practical concession that there was sufficient evidence to justify the defendant's conviction of the crime of selling intoxicating liquors contrary to law, or of keeping such liquors with intent to sell the same unlawfully, the only question for solution is, Did the defendant keep or use a building or place for that purpose? The authorities furnish no uncertain answer to this proposition. In the case of State v. Arnold, 98 Iowa, 253, 67 N. W. 252, it is said: 'It, of course, is to be understood that it is not necessary to prove that the defendant was the owner, or even that he was a lessor under a formal lease. It is sufficient if he is shown to have been maintaining a nuisance; and the ownership or even the rightful possession of the property is not a material question.' " See also State v. Herselus, 86 Iowa, 214, 53 N. W. 105.

In the case of Webster v. State, 110 Tenn. 491, 82 S. W. 179, it was held that a wholesale liquor dealer who sets up a retailer in business, indorses his application for a license, encourages him to engage in the business under it, and is present in the saloon when unlawful sales are made, and is, in fact, the chief beneficiary of the business, although it is not done in his name, is equally guilty with the retailer of making illegal sales. Again, in the case of Phillips v. State, 95 Ga. 478, 20 S. E. 270, it was held that "one who, by the use of his capital or credit aids in procuring or furnishing whisky to another for the purpose of being unlawfully sold by the latter, and it is so sold, and the former, by the agreement for conducting the business is to receive, and does actually receive, a given per cent on the cost of all the whisky so furnished and

29 N. D.—5.

sold," is guilty with the seller of selling the liquor unlawfully, whether under the terms of the agreement between them a technical partnership between them existed or not.

I have no fault to find with the form of the information or with the instructions which were given thereunder. It is true that the informa- tion charged the defendant was a principal, and that this was the proper method of procedure. It is also true that the instruction spoke of the connection of the defendant as that of an aider and abetter. Wherein, however, the defendant was prejudiced by this instruction it is difficult for me to understand. Section 8555, Rev. Codes 1905, § 9218 Compiled Laws of 1913, provides that "all persons concerned in the commission of a crime, whether it is a felony or a misdemeanor, and whether they di- rectly commit the act constituting the offense, or aid and abet in its com- mission, or, not being present, have advised and encouraged its commis- sion, . . . are principals in any crime so committed." It is perfectly clear, therefore, that the defendant was a principal and could be charged as a principal, even though the evidence showed that he did not actually and physically keep the place, but merely aided and abetted in the trans- action. An aider and abetter is one who assists, counsels, or advises; and I can see no error in instructing the jury to that effect.

The court charged the jury that "if you find in the facts in this case that at the stock yards near Taylor, in this county and state, there was a nuisance kept and maintained on the 4th of July, 1912, and that th· defendant, while not actually keeping the place, yet aided and abetted in the keeping of the same, then you should find the defendant guilty as charged in the information." And later, when asked by a juryman for further instructions, added: "Aiding and abetting practically means the same thing,—assisting, counseling, and advising. Under the law, aid- ing, abetting, or assisting—those three words are synonymous and mean the same thing. Anyone who in any way aids or assists in the commis- sion of a crime, why then he is an aider and an abetter under the law." And in answer to the question put by the jury, "Would this necessarily need to be previous to the 4th of July when the crime was committed?" he answered, "It wouldn't have to be,—either before or at the time of the commission of the offense." The learned trial judge took pains to point out that it was for the offense only of keeping and maintaining a common nuisance, as opposed to the offense of unlawfully selling intox-

icating liquors, that the defendant could be convicted, and there can be no possible ground for any belief that the "assisting, counseling, and advising" mentioned could have related to any other offense. He merely in effect told the jury that, even if the defendant himself did not manage the place, he nevertheless could be found guilty if he assisted, advised, or encouraged the act.

To quote the language of the supreme court of Kansas, in the case of State v. Corn, 76 Kan. 416, 91 Pac. 1067, "Evidently he (the defendant) was either the proprietor or a person who was actually aiding and assisting another in maintaining a nuisance. In either case he was guilty of the offense charged." See also State v. Nield, 4 Kan. App. 626, 45 Pac. 623; State v. Lord, 8 Kan. App. 257, 55 Pac. 503; State v. Hoxsie, 15 R. I. 1, 2 Am. St. Rep. 838, 22 Atl. 1059.

One, in short, can be convicted of aiding and abetting in the commission of a nuisance, and it is sufficient and proper that he shall be informed against as a principal. The mere fact, however, that the information may charge him as a principal does not alter the fact that proof that he aided and abetted will be sufficient to justify a conviction. It seems to me to be the summit of absurdity to say that one may furnish the money and reap the profit of running a nuisance, and yet not be liable unless he actually manages or superintends, or that, when the former facts are testified to, the jury may not be told that the testimony, if believed, will justify a conviction of the crime of keeping and maintaining, even though the defendant has merely aided, assisted, counseled, and advised.

BURKE, J.: I approve of the views of Judge BRUCE.