*Harlan & Craddock* for appellant: *B. & A. Monroe* for appellees.

---

## Smith *vs* Commonwealth.

ERROR TO THE LEXINGTON CITY COURT.

*Nuisances. Penal offences. Indictments.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

THIS is an indictment in the City Court of Lexington, against Smith, for keeping a disorderly house. The indictment charges, that Smith on a certain day, "and on divers other days and times, between that day and the taking of this inquisition, with force and arms, in the City aforesaid, unlawfully did keep and maintain a common, ill-governed and disorderly house, and in the said house, for the lucre and gain of him, the said Richard Smith, certain persons, as well men as women, of evil fame and name, and of dishonest conversation, then and on said other days and times, there unlawfully and willingly, did cause and procure to frequent and come together, and the said men and women, in the said house of him, the said Richard Smith, at unlawful times, as well in the night as in the day, then and on the other times and days, there to be and remain, drinking, tipling, cursing, swearing and otherwise misbehaving themselves, unlawfully did permit, and yet doth permit, to the great damage and common nuisance of all good citizens, and against the peace and dignity of the Commonwealth of Kentucky."

Upon the trial, the jury found the defendant guilty, and assessed his fine to the Commonwealth to $400, and his motion for a new trial being overruled, he has appeal-

INDICTMENT.

*Case* 7.

6m 21
97 501

6m 21
101 200

6bm 21
125 739

*Sept.* 19.

The charges in the indictment.

The *opinions* of witnesses that a house is a nuisance as it is kept, is incom-

SMITH
*vs*
COMMONWEALTH
petent, upon one
indictment char-
ging a nuisance.

ed to this Court. The Court erred in allowing the wit-
nesses to give their opinions that the defendant's house
was a nuisance, and in many of the instructions given
in behalf of the Commonwealth, and refused, at the
instance of the defendant, for which the judgment must
be reversed. But in as much as there is a radical defect
in the proof to sustain the indictment as found, we deem
it unnecessary to point out these errors.

This indictment is deemed substantially good, whether
it apply to free white persons or slaves.

But the proof establishes the fact, that the persons
who were assembled at the defendant's house, (a groce-
ry,) from time to time, were slaves, and free persons of
color. And giving to the proof its full force, the jury
might have inferred from it, that slaves and free persons
of color, were in the habit of being assembled at the de-
fendant's grocery, on Sabbath days and at other times,
in numbers unauthorized by law, and that said Smith
traded with them, and sold and gave liquor to them,
without the authority of their masters, as well to drink
at the grocery, as to carry off and drink elsewhere, and
that they were habitually allowed and encouraged to re-
main tipling and drinking, at the said grocery. But the
testimony does not establish that they were in the habit
of cursing, swearing and making a noise, to the annoy-
ance and disturbance of the neighbors, but the contrary
appears by the proof.

We do not doubt that the facts proven, or those which
may be rationally inferred from the proof, constituted the
house a disorderly house. The keeping of a grocery, at
which that class of the community are habitually allowed
to assemble, and buy whiskey and tiple and drink at
pleasure, is calculated to corrupt their morals, to tempt
them to petty larcenies, by way of procuring the means
necessary to buy, to lead them to dissipation, insubordi-
nation and vice, and obstruct the good government, well
being and harmony of society. A house in which such
practices are encouraged and indulged, though no cursing
or swearing or noise is made whereby the neighbors are
disturbed, is a public annoyance, and may properly be
denominated a public nuisance. Nor is it rendered less

a public nuisance, from the fact that statutes have prescribed specific penalties for trading with, or selling or giving liquor to slaves, without the permission of their owners, or permitting more than a prescribed number to assemble. These statutes apply to single offences, and their enactment evidence the opinion of the Legislature, as to the effects the prohibited acts may have upon the well being of the public.

The habitual perpetration of the prohibited offences in a house kept for the purpose, constitutes the house a public nuisance, as it tends, in a greater degree to the spread of the evil which was intended to be prohibited by these enactments. There is a specific penalty for fornication and adultery. Yet it is an offence and a much higher grade of offence to keep a bawdy house, or a house where those practices are indulged. And though the single offence may be punished by a specific fine, the keeping of a house where those offences are habitually encouraged and indulged, is an offence of a much higher grade, and is punishable as such, by an indictment at common law. So the keeping of a grocery, where practices, by a certain class of the community, are habitually indulged, which have been prohibited by the legislature, as of evil tendency to the public, must be deemed a public nuisance.

But the peaceable and habitual assembling of white persons, in the same or any other number, at the grocery for the same purposes, and who even indulged in the same practises as those proven against the slaves, it is believed would not constitute the house a public nuisance, as such assemblies and indulgences would not be of the same evil consequences to the public, and are not prohibited by law, unless the sale of liquors by retail, and the tipling and drinking in the house, should constitute it a tipling house, in which case there is a prescribed statutory penalty for keeping such a house, which is commensurate with the evil, and covers the entire offence.

If such assemblies and practices of slaves in the said house will constitute it a disorderly house, and similar assemblies and practices of white persons will not, it would follow that an indictment to be sustainable, should distinguish and charge that they were slaves that assembled.

Smith
vs
Commonwealth

The habitual practice of a punishable offence, tho' punishable by pecuniary penalty, may nevertheless constitute a house in which they are practised, a public nuisance, for which an indictment will lie.

Keeping a house at which spirituous liquor is habitually sold to slaves, is an indictable offence, notwithstanding each act of sell-

ing may subject
the offender to a
pecuniary penal-
ty.

</div>

There being no such specification in the indictment before us, it cannot be sustained upon the proof adduced.

But upon the return of the cause, inasmuch as other proofs may be offered, showing that the assemblies at said grocery were attended with cursing, swearing and other like misbehavior, to the disturbance of the peace of the neighborhood, which is embraced in the general charges of the indictment, and would constitute a disorderly house, whether the assemblies were composed of whites or blacks, all that can be done upon reversal, is to direct a new trial and further proceedings.

The judgment of the City Court is therefore reversed, and cause remanded, that a new trial may be granted, and further proceedings had.

*Combs & Shy* for plaintiff: *Cates, Attorney General*, for Commonwealth.

