## COMMONWEALTH *vs.* GEORGE CHURCHILL & another.

Plymouth.    Oct. 16. — Nov. 30, 1883.    FIELD & W. ALLEN, JJ., absent.

An indictment on the Pub. Sts. c. 101, §§ 6, 7, for keeping and maintaining a tenement used for the illegal sale of intoxicating liquors, is not supported by proof that the defendant committed the offence described in § 9; namely, that, being the owner of the premises, he made a written lease of them to another, knowing that the lessee intended to use them for the illegal sale of intoxicating liquors; and that the lessee so used them.

An indictment on the Pub. Sts. c. 101, §§ 6, 7, for keeping and maintaining a tenement used for the illegal sale of intoxicating liquors, is not supported by proof that the defendant, who was a servant of the lessee of the premises, made illegal sales in the presence, or under the direct personal supervision, of his employer.

HOLMES, J. This is an indictment against George Churchill and Nathaniel H. Whittemore, for keeping and maintaining a tenement used for the illegal sale of intoxicating liquors. The defendant Churchill owned the premises, and had made a written lease of them to one Dow. The defendant Whittemore was Dow's servant and agent employed there in his business.

With regard to Churchill, the jury were instructed that, if he made the lease knowing that Dow intended to use the premises for the illegal sale of intoxicating liquors, and Dow did so use them during the time alleged, he might be found guilty under this indictment.

There is undoubtedly a strong argument in favor of such a ruling, but we think, on the whole, that the defendant is entitled to have the statutory offence which the supposed facts would establish more plainly described to him than it is. Section 9 of the Pub. Sts. *c.* 101, which deals with that offence, is part of a statutory scheme. By one part of the scheme, the sale of intoxicating liquors, except as expressly authorized, is made unlawful and punished. Pub. Sts. *c.* 100, §§ 1, 18. By another, tenements used for such unlawful sales are declared to be common nuisances, and whoever keeps or maintains them is subjected to fine and imprisonment. *c.* 101, §§ 6, 7. By a third, being that which concerns the defendant, one who knowingly lets a building owned by him for the purpose mentioned shall be deemed guilty, not of maintaining such nuisance, but of " aiding in the maintenance of such nuisance." *c.* 101, § 9.

The argument is not satisfactory to us, that, apart from statute, tenements so used would be common nuisances ; *Smith* v. *Commonwealth*, 6 B. Mon. 21 ; *Meyer* v. *State*, 13 Vroom, 145 ; that letting a tenement, knowing that it was hired for that purpose, would be abetting a nuisance and a misdemeanor ; *Commonwealth* v. *Harrington*, 3 Pick. 26 ; *People* v. *Erwin*, 4 Denio, 129 ; *State* v. *Williams*, 1 Vroom, 102 ; that, in common law misdemeanors, all are principals, and that therefore, on common law principles, the defendant might be indicted for maintaining the nuisance, and perhaps ought to be. *People* v. *Erwin*, and *State* v. *Williams*, *ubi supra*.

Apart from statute, it is not illegal to sell intoxicating liquors. And when the first link in the chain of offences is statutory, we

do not feel called upon to consider what would have been the defendant's position if the statute had stopped there and left the rest to the common law. It did not stop there, but dealt specifically with the acts charged against the defendant. His offence is as entirely statutory as unlawfully selling liquor would be. This being so, we do not feel warranted in carrying the statute further than it expressly goes, or in saying that what the statute calls aiding, and punishes as such, may be indicted as maintaining.

A man may give a certain amount of indirect aid to another in maintaining such a nuisance without being liable at all, and of course, therefore, without being held to maintain it. See *Commonwealth* v. *Willard*, 22 Pick. 476. In those cases where aiding has been held to amount to maintaining, the defendant has had some sort of control over the premises, as we shall have occasion to show in dealing with the case of Whittemore. Aiding then does not necessarily amount to maintaining, and the statute may have intended to distinguish, and to punish a kind of aiding as such, which did not in its view rise to the height of the other offence. It may have given more weight to the *locus poenitentiæ* of the tenant than it would have in the case of a lease to a woman of ill fame for a bawdy-house. Even in the latter case, the indictments which have been passed upon by this court have charged a letting for the purpose, not a keeping and maintaining. *Commonwealth* v. *Harrington, ubi supra.* See *Commonwealth* v. *Moore*, 11 Cush. 600, 602; *Commonwealth* v. *Bossidy*, 112 Mass. 277.

Apart from the foregoing considerations, it is only by somewhat refined and technical reasoning that one who lets a tenement to another, who intends to and does use it for the illegal sale of liquor, can be said himself to keep or maintain it for that purpose merely because he knows the intention, although we add the element that the lease is void by statute, and that the landlord has it in his power to turn the tenant out. The offence is not naturally described in that way; and, as the law distinguishes between different acts which in their nature are very distinguishable, we think the indictment should be equally definite.

With regard to the other defendant, Whittemore, the jury were instructed that, although he made the illegal sales in the

presence, or under the direct personal supervision, of his employer, he would be liable under the indictment. This also we think wrong. The Massachusetts decisions have never pressed the liability of a servant for keeping or maintaining a nuisance, consisting of a tenement in the possession of his master, under circumstances like the present, beyond cases where the servant had had charge and control of the place, for a short time at least. *Commonwealth* v. *Tryon*, 99 Mass. 442. *Commonwealth* v. *Kimball*, 105 Mass. 465. *Commonwealth* v. *Maroney*, 105 Mass. 467, n. *Commonwealth* v. *Roberts*, 132 Mass. 267. See *Commonwealth* v. *Drew*, 3 Cush. 279, 283, 284.

It is true that sales in the presence of the master do in some degree aid the master in keeping the tenement. But so do purchases, which nevertheless are not misdemeanors of any description. *Commonwealth* v. *Willard*, *ubi supra.* The distinction between acts which amount to maintaining the nuisance, and those which do not, is one of degree. We do not think that the misdemeanor of unlawfully selling, committed by a servant, can be said as a matter of law to amount to maintaining a nuisance, unless he has assumed a temporary control of the premises, or in some other way emerged from his subordinate position to aid directly in maintaining it. This limit seems to be indicated by the case upon which the Massachusetts decisions are founded. *Regina* v. *Williams*, 1 Salk. 384; *S. C.* 10 Mod. 63. And none of our cases have gone further than to leave the general question to the jury, whether the defendant aided in keeping the tenement, when it appeared that he did so by exercising some form of control. *Commonwealth* v. *Dowling*, 114 Mass. 259. *Commonwealth* v. *Burke*, 114 Mass. 261. *Commonwealth* v. *Gannett*, 1 Allen, 7. *Commonwealth* v. *Mann*, 4 Gray, 213. In *Commonwealth* v. *Hadley*, 11 Met. 66, cited by the government, the defendant was indicted for being a common seller, and for selling, offences which could be committed by a servant in presence of his master as readily as behind his back.

*Exceptions sustained.*

*B. W. Harris & R. O. Harris*, for the defendants.

*E. J. Sherman*, Attorney General for the Commonwealth.