## STATE *vs.* NELLIE SMITH.

At the trial of an indictment for keeping a house of ill-fame, it appeared that the defendant owned the house, lived in it as its mistress, and let rooms to female lodgers, who used them for purposes of prostitution. The presiding justice instructed the jury that the defendant was guilty if she let her rooms to prostitutes for prostitution, or knowingly permitted them to be used and resorted to for that purpose, though the occupants were merely boarders or lodgers, and were not employed to ply their business by her as mistress of the house. *Held*, no error.

EXCEPTIONS to the Court of Common Pleas.

*May* 28, 1885. DURFEE, C. J. The defendant was indicted in the Court of Common Pleas for keeping and maintaining "a building, place, and tenement used as a house of ill fame, resorted to for prostitution and lewdness, . . . and for the habitual resort of intemperate, idle, dissolute, noisy, and disorderly persons." On the trial the government offered testimony tending to prove that dissolute women lodged and lived at the house of the defendant, and brought men with them to the house, and solicited men on the streets for purposes of prostitution. The defendant offered testimony tending to prove that she let her rooms to female lodgers at three dollars per week, and that she did not know what the character of the lodgers was, and that no one to her knowledge resorted to her house for the purposes of prostitution. The jury found the defendant guilty. The case comes here on exceptions for alleged error in the charge of the court below.

The charge is reported *in extenso*. In the course of it the court referred to testimony of the defendant to the effect that the house complained of was her house, and that to obtain a livelihood she took a few boarders and let her rooms occasionally, as she had opportunity, and instructed the jury that the defendant had a right to let her rooms in a legitimate way ; but that if she let her rooms to women for the purposes of prostitution, then she was as guilty as if she had herself employed the women for those purposes ; and

also that, while it was not necessary for the State to prove specific acts of immorality, it was necessary for the State to satisfy the jury that such acts were committed in the rooms, and that the defendant knew or had reason to know they were committed there, or let her rooms to the end that they might be committed there, or that she knowingly permitted her house to be used for the habitual resort of intemperate, idle, dissolute, noisy, and disorderly persons. At the close of the charge the defendant requested the court to instruct the jury that if they believed that the persons who frequented the house were boarders or visitors, the defendant was not responsible. The court refused to grant the request without modification. In making the modification the court used some expressions which, disconnected from the rest of the charge, might be understood to mean that the defendant, if she simply let her rooms to prostitutes knowing them to be such, or if she suffered her house to be frequently visited by the disreputable classes of people mentioned in the indictment, might be convicted. If the court meant to be so understood, it was doubtless error. It is not a crime for a person to let his rooms to such women, simply as he would let them to reputable women, for quiet and decent occupation. Neither is it a crime for a person to suffer his house to be visited by disreputable people, if they only visit it for innocent and proper purposes. For instance, a keeper of a restaurant would not be indictable for keeping and maintaining a building, place, or tenement used for the habitual resort of intemperate, idle, dissolute, noisy, and disorderly persons, merely because such persons are accustomed to come to his restaurant to get their meals, if while there they behave in a proper manner. Taking the language in connection with the rest of the charge, however, we think the court did not intend the broader meaning. Doubtless what the court meant, and what it was understood to mean, was that the defendant was guilty if she let her rooms to prostitutes for prostitution, or knowingly permitted them to be used and resorted to for that purpose, though the occupants were merely boarders or lodgers, and were not employed to ply their business by her as mistress of the house. The question is, therefore, whether there is error in such an instruction, and this is the question which was argued by the counsel for the defendant.

The counsel, to show that there is error, cites *Regina* v. *Stannard*, Leigh & Cave C. C. 349, and *Commonwealth* v. *Churchill*, 136 Mass. 148. These were cases in which the owners of the houses complained of leased them to tenants. In *Regina* v. *Stannard* the owner let his whole house in parts to women as weekly tenants, who, with his knowledge and assent, used their respective rooms for the purposes of prostitution. The owner, however, retained no part of the house for himself, nor did he keep a key or reserve a right of entry. The house was left wholly in the control of the tenants. In *Commonwealth* v. *Churchill*, the owner had given a written lease of the house. The cases differ materially from the case at bar; for in the case at bar the owner continued to live in her house as the mistress of it, the women who occupied her rooms being merely boarders or lodgers. She had power to eject them at any time, if they were using her rooms for the purposes of prostitution. And see Pub. Stat. R. I. cap. 80, § 4.[1] We think, therefore, that if the defendant, while so living in her house and remaining the mistress of it, knew that her boarders or lodgers were using the rooms for the purposes of prostitution and continued to let them for such uses, she was properly convicted of keeping and maintaining a tenment used as house of ill-fame, resorted to for prostitution and lewdness. She must be held to have kept her house for that purpose, when, remaining the mistress of it, she let her rooms to women who paid her for the use of them for that purpose, as much as if, instead of a stipulated price, they had paid her a percentage of their illicit gains.

The other exceptions were not pressed and are overruled.

*Exceptions overruled.*

*Samuel P. Colt*, Attorney General, for plaintiff.

*George J. West*, for defendant.

---

[1] As follows : —

SECT. 4. If any person, being a tenant or occupant, under any lawful title, of any building or tenement not owned by him, shall use such premises or any part thereof for any of the purposes enumerated in section one of this chapter, such use shall annul the lease or other title under which said occupant holds, and, without any act of the owner, shall cause the right of possession thereof to revert and vest in him, and said owner may make immediate entry thereon without process of law.