## COMMONWEALTH vs. JAMAREE REID.

No. 06-P-1539.

Suffolk. April 2, 2008. - December 31, 2008.

Present: DUFFLY, CYPHER, & COHEN, JJ.

*Nuisance. Alcoholic Liquors,* Nuisance. *Practice, Criminal,* Instructions to jury, Argument by prosecutor.

The evidence at a criminal trial, from which a jury could reasonably have inferred that the defendant had the requisite control over an apartment during a period when he was engaged in the illegal sale of alcohol to others during a party on the premises, was sufficient to convict the defendant of maintaining a nuisance in violation of G. L. c. 139, §§ 14 and 15 [426-428]; however, the defendant's conviction of aiding in the maintenance of a nuisance in violation of G. L. c. 139, § 20, could not be maintained, where there was no evidence that the defendant permitted anyone else to illegally sell alcohol from the premises [430-431].

At the trial of a complaint charging the defendant with maintaining a nuisance in violation of G. L. c. 139, §§ 14 and 15, arising from the defendant's sale of alcohol to partygoers at a residence, the judge's instruction to the jury regarding their determination whether the premises were under the defendant's control was not erroneous. [428-429]

Remarks by a prosecutor at a criminal trial neither shifted the burden of proof to the defendant [431-433] nor appealed to the jurors' emotions [433].

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on February 14, 2006.

The case was tried before *Thomas C. Horgan,* J.

*Michael M. Harrington* for the defendant.

*Stephen M. Kerr,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. Following a raid of an apartment where liquor was being sold to partygoers, the defendant was arrested and thereafter convicted by a Boston Municipal Court jury of several

offenses.[1] This appeal is from his convictions of maintaining a nuisance, G. L. c. 139, §§ 14 and 15, and aiding or permitting a nuisance, G. L. c. 139, § 20.[2] The defendant argues that (1) the evidence was insufficient to support convictions of maintaining a nuisance and aiding in the maintenance of a nuisance; (2) convictions of both maintaining a nuisance and aiding in the maintenance of a nuisance violate his right against double jeopardy; (3) the judge failed properly to instruct the jury on the two offenses; and (4) the prosecutor's closing argument was improper and resulted in a substantial risk of a miscarriage of justice. Because there was insufficient evidence to support conviction of aiding in the maintenance of a nuisance, we reverse the judgment as to that conviction; we affirm the judgment convicting him of maintaining a nuisance.

*Facts.* The jury could have found the following facts. At around 3:20 A.M. on February 12, 2005, the Boston police received information that there was a party taking place at 544 Harvard Street in the Mattapan section of Boston.[3] The party had begun at about 2 A.M. Two officers dressed in plain clothes, Tabitha Coleman and Cynthia Brewington, were dropped off near the address, while other officers remained behind to await for a prearranged signal. The officers were part of a sting operation known as "Operation Party Time," created in response to the problem of after-hours parties. The officers proceeded to the Harvard Street address where they stood in line waiting to enter the

---

[1]The defendant was charged with (1) possession of a firearm without a license, G. L. c. 269, § 10; (2) possession of ammunition without a firearm identification card, G. L. c. 269, § 10(h); (3) receiving stolen property of a value greater than $250, G. L. c. 266, § 60; (4) unlawful sale of liquor, G. L. c. 138, § 2; (5) keeping a noisy and disorderly house, G. L. c. 272, § 53; (6) maintaining a nuisance, G. L. c. 139, §§ 14-15; and (7) aiding in the maintenance of a nuisance, G. L. c. 139, § 20.

[2]The charge of receiving stolen property was dismissed at the request of the Commonwealth. At trial, after the close of all the evidence, the defendant moved for a required finding of not guilty on all charges. His motion was allowed as to the charge of keeping a noisy and disorderly house; it was denied as to all other charges. The jury returned verdicts of not guilty on the firearm and ammunition charges. On the remaining charges the defendant was sentenced to three concurrent terms of one year in the house of correction. He does not appeal from his conviction of unlawful sale of liquor.

[3]Flyers given out at a nightclub on Blue Hill Avenue advertised information about the party.

second-floor apartment through a side door. A woman, later identified as Michelle Thorpe, "pat frisked" those seeking entrance and collected money from them. Officer Coleman paid Thorpe the entry fee with a marked twenty-dollar bill. A member of the Boston police force had, a week earlier, broken up a party at the apartment and had warned Thorpe against throwing such after-hours parties.

The officers proceeded upstairs and entered a doorway that led to the kitchen area, where they saw people buying alcoholic beverages. There were between 100 to 125 people in the kitchen. The defendant was serving alcohol out of a pantry, the entrance to which was barricaded by a table that prevented anyone else from entering that space. Officer Coleman joined a line with others purchasing liquor; when Officer Coleman reached the defendant, she purchased two beers from him using another marked twenty-dollar bill. The defendant retrieved the beers from a refrigerator in the pantry, made drinks at the table, sold drinks, and made change for people from money he kept in a drawer in the table. Officer Brewington returned to the first-floor entrance to observe Thorpe while Officer Coleman stayed in the kitchen. The defendant was the only person in the pantry when the officer made the purchases, and no one else was seen entering the pantry while the officers were at the party.

At some point, the officers signaled the waiting Boston police officers, who then raided the party. On their arrival at the scene, the officers observed traffic congestion on the street and cars parked on sidewalks, double-parked on the street, and blocking hydrants and crosswalks. Detective Randall Halstead entered the apartment and observed the defendant, who matched Officer Coleman's description of the man who had sold beer to her, standing alone in the kitchen area. The defendant told Detective Halstead that he was staying at his girlfriend Michelle's apartment and was giving a party. For his safety, Detective Halstead pat frisked the defendant and found in the defendant's pants pocket approximately $531, including the marked twenty-dollar bill that had been used to purchase beer, whereupon the defendant was arrested.[4]

---

[4]During a subsequent search of the area near the defendant, the police found a loaded gun, see notes 1 and 2, *supra*, in the table drawer in which the defendant was keeping money.

*Discussion. 1. Maintaining the nuisance. a. Sufficiency of the evidence.* The defendant first argues that the evidence was insufficient to support his conviction under G. L. c. 139, § 15, which penalizes "[w]hoever keeps or maintains [a] common nuisance." A common nuisance is defined by G. L. c. 139, § 14, as amended by St. 1934, c. 328, § 10, as a "building, place or tenement . . . which is used for the illegal keeping or sale of alcoholic beverages."

A person may be found criminally liable under §§ 14 and 15 if the evidence establishes that (1) he kept or maintained a place, (2) for an unlawful purpose (such as keeping for sale, or selling, alcoholic beverages), and (3) the place was used, over some period of time, for such illegal purpose (by the defendant or others).

To "keep or maintain" a nuisance imports the concept of control by the defendant over the place of the nuisance, as well as the requirement that the illegal activities that render the premises a common nuisance take place over time. "To 'keep' may, in its ordinary and more obvious sense, apply only to one who exercises control or proprietorship of the building or place used." *Commonwealth* v. *Kimball*, 105 Mass. 465, 467 (1870).[5] "[T]he

---

[5]The court in *Kimball*, 105 Mass. at 467, went on to state: "The building is not maintained by the occupant; but the nuisance is maintained by prosecuting therein the illegal traffic. The alternative, 'whoever keeps or maintains,' will apply therefore either to the one who controls the occupation and procures or permits the illegal use; or to one who engages in the illegal use, and thus maintains or aids in maintaining the public nuisance." Under this definition of "maintain," the sale by the defendant of illegal liquor on premises owned or controlled by another, supports or aids in the maintenance of a nuisance and violates G. L. c. 139, § 15. The case has not been cited for this proposition in the nearly 150 years since it was issued, and subsequent decisions do not follow it.

In *Commonwealth* v. *Churchill*, 136 Mass. 148, 151 (1883), Justice Holmes clarifies this view of "maintaining," which he distinguishes from "aiding," when he cites *Kimball*, *supra*, and other cases, as standing for the proposition that "Massachusetts decisions have never pressed the liability of a servant for keeping or maintaining a nuisance, consisting of a tenement in the possession of his master, . . . beyond cases where the servant had had charge and control of the place, for a short time at least." See *Commonwealth* v. *Kimball*, 7 Gray 328, 330-331 (1856) (offense of maintaining a common nuisance "consisted in keeping and maintaining the house" and allegations that it was used for prostitution, gambling, and the illegal sale and keeping of liquor "form[ed] the elements which made up the single offence of a nuisance"). See also *Commonwealth* v. *Martin*, 304 Mass. 320, 321 (1939) (discussing the charge

government must prove that the defendant kept and maintained the tenement for the sale of intoxicating liquor . . . ." *Commonwealth* v. *Merriam*, 148 Mass. 425, 427 (1889) (defendant "was the owner or in control of the premises" where he sold liquor, was on the premises when others sold liquor, had keys to some rooms, and paid most bills of the business). See *Commonwealth* v. *Tabor*, 138 Mass. 496, 497 (1885) (Holmes, J.) ("It was enough to prove one or two illegal sales, if the jury drew the inference that the defendant kept and used the building for the purpose of such sales"); *Commonwealth* v. *Murray*, 138 Mass. 508, 510 (1885) (Holmes, J.) (same); *Commonwealth* v. *Baker*, 155 Mass. 287 (1892) (jury correctly instructed on a complaint for keeping and maintaining a tenement for illegal gambling that the Commonwealth must prove that, "during some substantial portion of the time alleged, the defendant kept the tenement in question, and that during such period it was with his consent resorted to and used for illegal gaming").[6] "The distinction between acts which amount to maintaining the nuisance, and those which do not, is one of degree. We do not think that the misdemeanor of unlawfully selling, committed by a servant, can be said as a matter of law to amount to maintaining a nuisance, unless he has assumed a temporary control of the premises, or in some other way emerged from his subordinate position to aid directly in maintaining it." *Commonwealth* v. *Churchill*, 136 Mass. 148, 151 (1883).

The offense is the keeping or maintaining of the nuisance. "The criminal intent involved in the commission of this crime is the intent to keep the tenement, knowing and suffering it to be a common nuisance. It is immaterial who does the other

of maintaining a nuisance by keeping a disorderly house: "It is the use of the premises that is condemned by the statute"); *Commonwealth* v. *Mullane*, 445 Mass. 702, 715-716 (2006) ("Conviction for keeping a house of ill fame requires the Commonwealth to show [1] that the defendant owned, managed, or maintained the premises; and [2] that the premises were resorted to for sexual activity for hire").

[6]As the cases cited in this opinion reflect, the court has employed the conjunctive "and" ("to keep and maintain") when discussing the crime, although the statute penalizes one who "keeps or maintains" a common nuisance. See *Commonwealth* v. *Patterson*, 138 Mass. 498, 500 (1885). The phrases are often used interchangeably. See *Commonwealth* v. *Tryon*, 99 Mass. 442, 444 (1868).

unlawful acts which make it a common nuisance." *Commonwealth* v. *Walsh*, 165 Mass. 62, 66 (1895). The sale of illegal liquor (by the defendant or someone else) may provide evidence of an element of the crime — that the premises are maintained as a nuisance — but the illegal sale of liquor does not, without more, support conviction under G. L. c. 139, §§ 14 and 15.[7] See *Commonwealth* v. *Galligan*, 144 Mass. 171, 173-174 (1887); *Commonwealth* v. *Burns*, 167 Mass. 374, 379 (1897).

Thus, in this case, in order to convict the defendant of maintaining a common nuisance under §§ 14 and 15, the Commonwealth was required to prove that during the time that the apartment was under the defendant's control, it was maintained by him for the purpose of conducting therein a proscribed activity (in this case, the illegal sale of alcoholic beverages).

The evidence, viewed in the light most favorable to the Commonwealth, supports the conviction. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). From the evidence a reasonable jury could infer that the defendant was living in the apartment with his girlfriend at the time of the party and that he was the person in charge of giving the party where liquor was sold; he alone was engaged in the sale of alcoholic beverages to numerous partygoers inside the apartment over a period of at least one and one-half hours. This was evidence from which a jury could reasonably have inferred that the defendant had the requisite control over the premises during a period when he was engaged in the illegal sale of alcohol to others on the premises, and this in turn supported a finding that the defendant was maintaining a nuisance.

b. *Jury instruction.* The defendant argues for the first time on appeal that the jury were not instructed as to "what evidence would show that the house was 'under [the defendant's] control.' "[8] The judge instructed that the Commonwealth was required to prove:

"First, that the building was being used for the illegal

---

[7]It does, of course, support conviction of the unlawful sale of liquor in violation of G. L. c. 138, § 2 (which also prohibits keeping liquor with the intent to sell it).

[8]The Commonwealth argues that any error in the instruction was harmless because, under *Commonwealth* v. *Kimball*, 105 Mass. at 467, a correct instruc-

keeping or sale of alcoholic beverages. Second, that the defendant owned or maintained the building at the time of the illegal keeping of the sale of such alcoholic beverages."

Limiting our discussion to the point now raised by the defendant, this statement is not erroneous. As our cases have indicated, the concept of "maintaining a nuisance" imports the concept of control over the place in which the nuisance occurs. The thrust of the defense, and the focus of the defendant's closing argument, was that the defendant was a guest in his girlfriend's apartment and had no control over the party. We think the jury well understood that the Commonwealth needed to prove beyond a reasonable doubt that, during the time frame in which he was selling alcohol to partygoers, the defendant exercised control over the premises. Even if the instruction might have been clearer on the question of control, "[t]he defendant did not object to any of these instructions. In considering whether the shortcomings of the judge's instructions, when viewed in the context of the instructions as a whole, created a substantial risk of a miscarriage of justice, we are cognizant of the strength of the evidence against this defendant." *Commonwealth* v. *Whitman*, 430 Mass. 746, 755 (2000).[9]

---

tion required the jury to be informed only "that the defendant engaged in the illegal keeping or sale of alcoholic beverages" and the jury in this case "convicted the defendant of unlawfully selling liquor in violation of G. L. c. 138, § 2." As we have discussed, *supra*, we do not agree that this is all that is required. See *Commonwealth* v. *McNeff*, 145 Mass. 406, 409 (1888) (on a complaint for keeping and maintaining a tenement used for the illegal keeping and sale of intoxicating liquors, if the illegal sales on two different days are proved, the element of the continuing use of the tenement for that purpose, which would not necessarily follow from one sale, may be inferred by the jury); *Commonwealth* v. *Slavski*, 245 Mass. 405, 418 (1923) ("proof of a single sale of intoxicating liquor standing alone and unsupported by other circumstances will not warrant a conviction for maintaining a nuisance").

[9] In this case, had he been requested to do so, the judge might have instructed that the Commonwealth was required to prove that the apartment was being used by the defendant for the purpose of conducting therein the illegal sale of alcoholic beverages and that the defendant had control over the apartment during the period of time it was being used to engage in such illegal sales. The judge also might have instructed that control need not have been over the whole building but only the apartment, or tenement, where the alcohol was being sold, see *Commonwealth* v. *McCaughey*, 9 Gray 296 (1857), and that control could be established by evidence that the defendant had the power or authority to direct or manage the activities during the party, but that the exercise of control need not be exclusive.

2. *Aiding or permitting maintenance of a nuisance.* Among other acts, G. L. c. 139, § 20, punishes a person who knowingly permits premises, while under his control, to be used for the illegal sale of alcoholic beverages.[10]

Under this provision, it is not enough to establish that the defendant had control over the premises and that the premises were used for the illegal sale of alcohol, as the Commonwealth argues. Although there was evidence that the defendant *himself* sold alcohol, there is here no evidence that the defendant *permitted others* to do so. The term "to permit" does not support a construction that the defendant, in selling liquor, was permitting himself to do so. Section 20 "was intended to reach the case of a landlord who, under the preceding section, has the right to make entry upon the premises and prevent the illegal use; and, by construction, it implies that the building or tenement must be used for the illegal purpose by some third person holding under the landlord." *Commonwealth* v. *Bartley*, 138 Mass. 181, 182 (1884).

Justice Holmes in *Commonwealth* v. *Churchill*, 136 Mass. at 149, observed the difference between the statutory prohibitions against (1) the unlawful sale of liquor, (2) "maintaining the nuisance," and (3) "aiding in the maintenance of such nuisance." Comparing the latter two offences, he noted that under the statutory scheme, "one who knowingly [rents] a building owned by him for the purpose mentioned shall be deemed guilty, not of maintaining such nuisance, but of 'aiding in the maintenance of such nuisance.' " *Ibid.* "[I]t is only by somewhat refined and

---

[10]Three different acts are prohibited by G. L. c. 139, § 20, as amended by St. 1985, c. 421, § 4: (1) "[w]hoever knowingly lets premises owned by him, or under his control, for the purposes of . . . the illegal keeping or sale of alcoholic beverages"; (2) "[whoever] knowingly permits such premises, while under his control, to be used for such purposes;" or (3) "[whoever] after due notice of any such use omits to take all reasonable measures to eject therefrom the persons occupying the [premises]." See *Commonwealth* v. *LaPointe*, 228 Mass. 266, 267 (1917) (interpreting a prior version of the statute, R. L. c. 101, § 11: "[t]he acts thus specified are separate and distinct, each from the others. One does not include either of the others.") See also *Commonwealth* v. *Wentworth*, 146 Mass. 36, 37-38 (1888).

The Commonwealth concedes that there was no evidence that the defendant had any legal ownership interest in the premises, and does not argue that the defendant's conduct falls within the third category of prohibited conduct.

technical reasoning that one who [permits a tenement to be used by] another, who intends to and does use it for the illegal sale of liquor, can be said himself to keep or maintain it for that purpose." *Id.* at 150. That the statute has since been amended to omit the phrase "aiding in the maintenance of such nuisance" in 1920[11] (although retaining it in the title) does not detract from the apparent intent of the Legislature to create an offense, as defined in § 20, that is distinct from that of maintaining a nuisance, as defined in G. L. c. 139, §§ 14 and 15.[12]

To be convicted of "knowingly permit[ing] such premises, while under his control, to be used for [illegal sale of alcoholic beverages]" under § 20 required proof that the premises were under the defendant's control and that he permitted another to use the premises for the illegal sale of alcohol. There is no evidence that the defendant permitted anyone else to illegally sell alcohol from the premises. Both officers testified that the defendant was the "only one" selling alcohol in the pantry area of the apartment and that no one else was with the defendant in the pantry.[13] The evidence was thus insufficient to support the defendant's conviction under c. 139, § 20.[14]

3. *Prosecutor's closing remarks.* The defendant did not object

[11]The language was changed when the laws of Massachusetts were recodified by the 1920 Report to the General Court of the Joint Special Committee on Consolidating and Arranging the General Laws, at 1203, which became effective in 1921.

[12]The title of an act may be considered in determining the scope or limitation of the statutory prohibition. See *Commonwealth* v. *Graham*, 388 Mass. 115, 120 (1983).

[13]In its brief, the Commonwealth concedes that the "defendant alone controlled the partygoers' access to the alcohol at the residence."

[14]Deciding as we do, we need not address at length the defendant's argument, made for the first time on appeal, that the judge failed to instruct the jury on the differences between the proof required to convict under G. L. c. 139, § 20, and that required to convict under G. L. c. 139, §§ 14 and 15. The instructions were identical, except that the judge used the phrase "under the defendant's control" when informing of the evidence needed to establish guilt under § 20, whereas he used the word "maintained" when instructing the jury as to §§ 14 and 15. As we have observed, *supra*, to maintain property also imports the concept of control over property, and in this respect the terms are interchangeable. Under the law of the case, see *Commonwealth* v. *Howze*, 58 Mass. App. Ct. 147, 151 (2003), the instructions described identical charges and would have been duplicative. Had he been requested to do so, the judge might have differentiated between the two offenses by further instructing that

at trial that the prosecutor's remarks during closing argument improperly shifted the burden of proof to the defendant and appealed to the jury's emotions. "[W]e review to determine if any error created a substantial [risk] of a miscarriage of justice." *Commonwealth* v. *Montez,* 450 Mass. 736, 747 (2008). "Under that standard, '[w]e analyze the remarks in light of the entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Delaney,* 425 Mass. 587, 599 (1997), cert. denied, 522 U.S. 1058 (1998), quoting from *Commonwealth* v. *Marquetty,* 416 Mass. 445, 450 (1993).

The defendant claims that the prosecutor improperly shifted the burden of proof to the defendant by commenting that certain evidence was "undisputed."[15] "References to material facts as uncontradicted or uncontested invariably approach the border of the forbidden territory of speculation regarding the absence of testimony by the defendant." *Commonwealth* v. *Buzzell,* 53 Mass. App. Ct. 362, 366 (2001). However, "[a] prosecutor is entitled to emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case, even though he may, in so doing, prompt some collateral or passing reflection on the fact that the defendant declined to testify." *Commonwealth* v. *Feroli,* 407 Mass. 405, 409 (1990). We examine the entire argument to determine whether, in context, the challenged remarks are "directed more at the general weakness of [the defendant's] defense than toward the defendant's own failure to testify." *Commonwealth* v. *Storey,* 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980).[16]

The remarks were directed at the general weakness of the

a § 20 offense requires evidence that the defendant permitted another to sell liquor on the premises.

[15]The prosecutor remarked that "[the defendant] actually sold liquor to two officers. And those facts aren't disputed . . . . At 3:30 in the morning at a residential neighborhood officers tell deejays to shut it down. Where music was on and where again it's undisputed there was a lot of people."

[16]A prosecutor's remarks are not prejudicially unfair unless they "are of such a nature that a jury would naturally and necessarily construe them to be directed to the failure of the defendant to testify." *Commonwealth* v. *Smallwood,* 379 Mass. 878, 892 (1980), quoting from *United States* v. *Armedo-Sarmiento,* 545 F.2d 785, 793 (2d Cir. 1976), cert. denied, 430 U.S. 917 (1977).

defendant's case and were not the focal point of the prosecutor's closing arguments. This is not a case where the defendant "himself is the only person who can contradict the otherwise uncontested evidence, [such that] the reference to the evidence as undisputed necessarily invokes consideration of the fact that the defendant did not present contrary information." *Commonwealth* v. *Buzzell, supra* at 367. Furthermore, the judge's specific and repeated instructions that the "burden of proof never shifts" to the defendant mitigated any potential prejudice.[17] See *Commonwealth* v. *Montez, supra* at 748.

The defendant next claims that the prosecutor improperly appealed to the jurors' emotions when he said, "This is not just a party. 3:30 in the morning in a residential neighborhood in a Mattapan-Dorchester section of Boston. This is not just a party." Prosecutors may not appeal to jury sympathy or prejudices in order "to sweep jurors beyond a fair and calm consideration of the evidence." *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975), quoting from *Commonwealth* v. *Perry*, 254 Mass. 520, 531 (1926). Here, the prosecutor's characterization of the size, location, and time of the party was a proper summary of the evidence. See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978); *Commonwealth* v. *Kent K.*, 427 Mass. 754, 759 n.6 (1998). In context, the remarks did not create a substantial risk of a miscarriage of justice.

*Conclusion.* The defendant's judgment of conviction under G. L. c. 139, § 20, is reversed; all other judgments are affirmed.

*So ordered.*

---

[17]In addition to instructing that the "burden of proof never shifts," he instructed that "the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant is guilty of the charge made against him," and that the "defendant has an absolute right not to testify since the entire burden of proof in this case is on the Commonwealth to prove that the defendant is guilty."